# CHARLESTON.

H. D. WIGGIN v. MARSH LUMBER COMPANY et al.

Submitted February 13, 1917.    Decided February 20, 1917.

1. SALES—*Construction of Contract—Delivery—Time—Default.*

   Under a contract of sale of lumber to be manufactured and delivered f. o. b. cars at a specified village, on either of two certain railways having separate stations or sidings for loading, about one-half mile distant from each other, at the election of the vendee, when ordered and directed by him and not otherwise, and to be paid for on receipt of bill of lading and invoice from his inspector, the vendor is not required to store lumber at the village named, for compliance with the contract, nor to act at all upon mere general orders or permits from the vendee, to haul lumber to such village, containing no designations of quantities or loading places, nor any promise or expression of intent to take up and pay for the lumber otherwise than as provided in the contract. (p. 657).

2. SAME—*Action for Price—Conditions Precedent.*

   If, in a contract of sale of personal property, the vendee reserves to himself the right to name the time or place of delivery, or both, or the qualities or quantities of the articles to be delivered from time to time, or both, or the time, place, qualities and quantities of partial deliveries, his orders designating such things as he has reserved the right to prescribe, are conditions precedent to action on the part of the vendor, and, if ready and willing to make deliveries, he is not in default, except upon receipt of such orders and failure of compliance therewith. (p. 660).

Error to Circuit Court, Raleigh County.

Action by H. D. Wiggin against the Marsh Lumber Company and others. Judgment for defendants, and plaintiff brings error.

*Affirmed.*

*File & File,* for plaintiff in error.

*Herbert Stansbury* and *McGinnis & Hatcher,* for defendants in error.

POFFENBARGER, JUDGE:

The elaborate recital of facts of this case found in the opinion setting forth the grounds of the disposition of a for-

mer writ of error in it, 77 W. Va. 7, renders a restatement thereof unnecessary. The evidence adduced on the new trial awarded may differ in some respects, from that upon which the former verdict rested, but the matter in controversy is the same. Some grounds of recoupment previously relied upon were not asserted in the second trial, but some additional items of set-off, wrongful deductions of freight, were claimed. As on the former trial, full defense was made under the general issue, and the jury found for the defendants.

As it sometimes happens, the terms of the contract were more closely observed and adhered to on the second trial than on the first, and two provisions thereof not specifically and clearly invoked on the former trial became the basis of the court's instructions, on the second. These were right of election as to the place of loading the lumber, reserved to the plaintiff, and the inhibition of the defendants from delivery otherwise than as ordered by the plaintiff. The first was that delivery should be made "f. o. b. cars at Surveyor, W. Va. on the C. & O. Railway or The Virginian Railway at the election of the said Wiggin" and the other, that "the remainder of said lumber," (all but the 50,000 feet to be furnished in October, 1908,), should be "delivered when ordered and directed by the said Wiggin and not otherwise." On the former trial, the defendants sought only one very short instruction telling the jury to find for the defendants, if they believed all the lumber ordered to be placed on the cars, by the plaintiff, had been "delivered F. O. B. cars Surveyor." The court gave it. In it, there is no express reference to these controlling provisions. For the plaintiff, the court gave six instructions on that trial and refused two others requested. Two of those given related to claims of recoupment, not now involved. One of them absolved the plaintiff from duty to prove actual damages. Two of them left it to the jury to say whether the defendants had failed to deliver lumber as ordered by the plaintiff, but did not define an order for lumber as contemplated by the contract. Another told them they might consider the correspondence upon the inquiries submitted to them. One of the two refused would have placed upon the defendants the duty of furnishing the cars for car-

riage and the other would have denied the defendants right
to set up a breach of the contract by the plaintiff, if they had
treated it as continuing.

On the second trial, the defendants sought and obtained
four instructions; the first of which told the jury the plaintiff
could not recover liquidated damages, because of non-delivery
of the 50,000 feet of lumber in October, 1908, as provided in
the contract, if they believed from the evidence he had agreed
to modify its terms as to that lumber; the second, that, if
they believed the defendants hauled 150,000 feet of poplar
lumber to Surveyor, in the summer of 1909, and permitted
the plaintiff's inspector to inspect it and take from it such
lumber as he desired, they should find he had waived their
failure to haul it to the railroad in January, 1909, in com-
pliance with his request; the third, that the statement in
the letter of January 4, 1909, that the defendants might haul
the oak lumber if they wanted to, although the plaintiff did
not care particularly about it, was a mere permission to haul
the oak, but not such an order as was contemplated by the
contract of July 11, 1908, as to that lumber; and the fourth,
that, although they might believe the plaintiff gave the de-
fendants any orders permissible under the contract of July
11, 1908, before the institution of the action, with which they
failed to comply, yet if they believed from the evidence, that
it was agreed between the parties, after the institution of the
action, that proceedings should be stayed and the contract
completed, it then became the duty of each party to go on
according to the terms of the agreement of July 11, 1908,
and of the plaintiff to give orders as provided therein; and
if they should believe there was no proof that the plaintiff
gave such orders, and the defendants did not have them and
could not complete the contract for want thereof, they should
find for the defendants, or rather that the plaintiff was not
entitled to liquidated damages. The court refused to honor
the request of the plaintiff for three instructions, two of
which, Nos. 1 and 6, treated the contract as imposing abso-
lute duty upon the defendants to deliver the lumber within
one year and the extensions of time assented to by the plain-
tiff, and the other, No. 3, ignored the defendants' evidence

tending to prove the delivery of 150,000 feet of poplar lumber at the railway siding and at the end of the tramway, and also treated the contract as absolute and unconditional. It also refused to give plaintiff's instructions Nos. 2, 4 and 5, as drawn, but modified them and gave them as modified. One of these, No. 4, as requested and as given, directed attention to the provisions of the contract, respecting the character of the orders to be given, and one of them, No. 2, advised the jury that the Marsh Lumber Company had no right to demand of Wiggin that he receive at one time the 150,000 feet of lumber, the defendants claimed to have hauled to the siding and the end of the tramway. All of them, as requested, absolved the plaintiff from estoppel or denial of right, by his waiver of conditions. In this respect, the court amended them. At his instance, the court gave three other instructions, without amendment, Nos. 7, 8 and 9. The first of these advised the jury that the defendants, after breach of the contract by the plaintiff, could not set up such breach, if they had waived it; and second, that the plaintiff was not required to ship lumber furnished him at Surveyor, as soon as it was delivered there, but that he had a reasonable time after delivery in which to procure cars to load it; and the third, that the contract sued on was a continuing one until July 16, 1910, and that the plaintiff's right to recover could not be defeated upon the ground of his failure to perform the contract, prior to that date, if the defendants did not furnish him any lumber under the contract, after that date.

Differences of opinion between the trial court and the attorneys for the plaintiff, as to the effect of the decision of this court upon the former writ of error, were the inducing causes of the adverse rulings complained of. Although the former verdict was set aside, careful examination and analysis of the opinion fail to disclose any purpose on the part of the court, to say the obligation of the contract on the part of the defendants was unconditional and absolute. On the contrary, it distinctly asserts the burden of conditions precedent resting upon the plaintiff. It says the duty of selecting the carrier and giving shipping directions falls on the plaintiff, and that, without performance of these duties, the defendants

could not be required to load the lumber. Nor does it over-
look or ignore the right of the defendants to have orders from
the plaintiff, as conditions precedent. In support of the for-
mer verdict, failure of the plaintiff to furnish cars and desig-
nate the carrier was relied upon extensively in the argument,
but it was held that failure to make one or more of the requi-
site selections named, did not exonerate the defendants from
compliance with express requirements as to delivery at the
time and place specified by the contract, when so ordered,
and that cars could be secured, the carrier elected and destina-
tion given, after the assembling of the lumber. But the duty
of the plaintiff to designate with each order, the place of
loading, the Chesapeake and Ohio siding or the Virginian sid-
ing, a right which he had reserved, and the inhibition of de-
liveries without orders, were not distinctly relied upon in
the argument, nor observed at all in the requests for in-
structions. These vital and controlling provisions of the con-
tract were practically ignored, both in the trial court and in
this court. But, when the case went back for a new trial,
they were invoked. By their request for instruction No. 3,
the defendants asked the court to tell the jury that their
general order to haul lumber contracted for, or a mere per-
mission to do so, without designation of the point to which
it was to be hauled, was not such an order as was contem-
plated by the contract. Though their instruction No. 4, did
not define the order contemplated by the contract, it did sub-
mit to the jury an inquiry as to whether orders were given
as provided for by it. One of the instructions given for the
plaintiff on the former trial told the jury lumber was to be
furnished as ordered by the plaintiff, not as ordered by him
in compliance with the terms of the contract defining the char-
acter of the order. Another told them it was the duty of the
defendants to haul and place the lumber at a convenient place
at Surveyor, if so directed by the plaintiff. These instruc-
tions declaring the plaintiff's right to order as he pleased,
were followed by another asserting liability on the part of the
defendants, for failure to furnish the plaintiff 500,000 feet
of lumber, on his orders to do so provided for by the agree-
ment. The first two allowed the plaintiff to order as he

pleased, and the third did not suggest any different theory to the jury, by its reference to the agreement. The first two construed the agreement as one allowing the plaintiff to order as he pleased, and the third did alter that interpretation. On the second trial, the court refused to tell the jury the defendants were bound to place the lumber at a convenient place at Surveyor, when directed by the plaintiff, and told them it was the duty of the defendants to furnish the lumber, as ordered and directed by the plaintiff, or his agent, as provided by the contract. Two others given, at the instance of the plaintiff, did not so define or limit the order, but the definition was an explicit requirement of plaintiff's instruction No. 4, and of defendants' instructions Nos. 3 and 4. Their combined effect was to bring the conditions precedent into full and conspicuous view.

If the rulings of the court on the second trial are correct and the verdict is sustained by the evidence, no injustice will be occasioned by disregard of so much of the former decision as is not accordant with the law of the case as it is now developed. It did not mislead either the trial court or the jury and application of correct principles of law will not result in a reversal of the judgment or award of a new trial. Under such circumstances, an erroneous decision on a writ of error may be disregarded on a second writ of error in the same case. *Pennington* v. *Gillaspie,* 66 W. Va. 643; *Cluff* v. *Day,* 141 N. Y. 580; *Bomar* v. *Parker,* 68 Tex. 435; *Bird* v. *Sellers,* 122 Mo. 23; *Bynum* v. *Apperson,* 9 Heisk. (Tenn.) 632; *Barton* v. *Thompson,* 56 Ia. 571. If the erroneous parts of the former decision had not been adopted, the costs here would have been adjudged against the plaintiff. These he then escaped. They will be no greater now than they would have been then. The costs of the second trial in the court below, which he may be deemed to have incurred as a result of the former decision, is comparatively a small matter, and, besides, he sought the privilege of a new trial and induced the error by which it was accorded him. Hence, it is obvious that no substantial injustice will result. The responsibility for the error must be shared by all members of this court that participated in the decision, the trial court and the

attorneys.   When the case was previously in this court, it
was earnestly considered in two conferences of all the judges
as the court was then constituted.

The practical and common sense determination of the rights
of the parties, evidenced by the two verdicts of juries, re-
turned in disregard of the *nisi prius* court's instructions on
the first trial and in accord with a reasonable interpretation
of those given on the second, seems to conform to well settled
law.   The contract was one of dependent covenants or of
covenants on the part of the vendor, dependent, as to obliga-
tion, upon the performance of conditions precedent by the
vendee.   If the vendee in a contract of sale reserves to him-
self the right to name the place of delivery, the quantities
in which deliveries are to be made, the mode of shipment,
the instrument of conveyance, or the like, the vendor's cove-
nant does not bind him to act, until the vendee has exercised
his election.   His designation as to the subject matter of his
reserved right of election is a condition either concurrent or
precedent, performance of which the vendor may await.
Benj., Sales, sec. 318.   ''Where the place is fixed but not the
time, neither party, as will be seen, can ordinarily put the
other in default until, in some way, the other has had rea-
sonable notice of the time when delivery would be offered or
demanded.''   Mech., Sales, sec., 1126.   ''Where expressly or
by implication the place of delivery is at the option of either
party, that fact throws upon him the burden of taking the
initiative, and it is his duty to give notice of the place at
which the goods will be offered or demanded.   If the contract
fixes the kind or time of the notice, the contract must prevail;
if it does not, reasonable notice would be required.   Until
such notice is given, the other party, if ready and willing to
perform, is not in default.''   Mech., Sales, sec. 1127.   ''If
the place is specified but not the time, neither party can or-
dinarily put the other in default by tendering or demanding
delivery at that place, unless reasonable notice of such act
has been given the other, or unless the place or circumstances
are such as to fairly make the act appropriate without pre-
vious notice; if the time or place is expressly or impliedly at
the option of either party, he cannot tender or demand deliv-

ery until he has given reasonable notice of the time or place at which such delivery is to be made." Mech., Sales, sec. 1130. If, in a sale of tobacco to be delivered f. o. b. cars at a certain place, there is no provision as to naming the carrier or the destination, the vendee must give the shipping directions, before he can demand performance on the part of the vendor, or put him in default. *Hughes* v. *Knott,* 138 N. C. 105. If a contract of purchase of railroad spikes provide that shipping directions shall be given by the buyer, his failure to give them exonerates the seller, and, if he gives, and then countermands them, before they are acted upon, the seller is not in default. *Railway Co.* v. *Iron Co.,* 126 Ill. 294. From the multitudinous decisions illustrating the operation of the principle, the following may be regarded as accurate and representative: *Dwight* v. *Echert,* 117 Pa. St. 490; *Rogers* v. *VanHoesen,* 12 Johns. (N. Y.) 221; *Dingley* v. *Oler,* 117 U. S. 490; *Harrow Spring Co.* v. *Harrow Co.,* 90 Mich. 147; *Posey* v. *Scales,* 55 Ind. 282; *Weill* v. *Metal Co.,* 182 Ill. 128; *Hunter* v. *Wetsell,* 84 N. Y. 549; *Armitage* v. *Insole,* 14 Ad. & Ell. (68 E. C. L.) 727.

Stipulations as to quantities in which deliveries are to be made are equally essential and binding. "Not only must the article delivered correspond in kind with what is agreed upon, but it must also correspond in amount. Where a specific quantity or number is agreed upon, to be delivered at one time, that quantity or number must be delivered, and the seller will not perform his undertaking, if he delivers either more or less." Mech. Sales, sec. 1157. "The precise amount to be furnished may also be left to be determined by one of the parties, and his determination, when made and manifested, fixes the quantity to which the contract applies." Mech. Sales, sec. 1170. "The seller is bound to deliver the quantity stipulated, and has no right either to compel the buyer to accept a less quantity or require him to select a part out of a greater quantity: and when the goods are to be shipped in certain proportions monthly, the seller's failure to ship the required quantity in the first month gives the buyer the same right to rescind the whole contract that he would have had, if it had been agreed that all the goods should

be delivered at once.'' *Norrington* v. *Wright,* 115 U. S. 188, 203; Mech. Sales, sec. 1216. The provisions of the contract as to time, place, quantity, price and all other conditions are material and binding upon both parties.

The plaintiff reserved to himself, in express terms, the right to fix the times of delivery and the kinds and quantities of lumber to be shipped, from time to time, within the year. He also held the right of election as to the exact place of each delivery. All were to be made at Surveyor, but each at one of two different points, one-half mile distant from each other, and, in every case, he had power of designation of the point of loading. All deliveries were to be made on board of cars. No other delivery would pass the title, shift the hazard of damages or loss, or entitle the defendants to payment. The prescribed mode and conditions of payment were remittance on receipt, from plaintiff's inspector, of bill of lading and invoice of lumber shipped.

The contract must be so construed as to make it operate reasonably and fairly. It contains no express provision as to interruption of the process of delivery, for the purpose of inspection. The parties did not likely contemplate the presence of an inspector, on the arrival of each wagon load or tramcar load of lumber; but such assemblage of lumber for inspection of shipments properly ordered, as may have been necessary, did not impose any duty upon the defendants to keep large quantities of lumber stored at or near the places of loading, for which no proper orders had been given, nor confer upon the vendee any right to demand it. However, it is unnecessary to construe the contract as to the rights and duties of the parties, respecting inspection. That part of it is not directly nor materially involved.

Of course, plaintiff's rights of election could have been waived, in so far as they had been reserved for his exclusive benefit and protection, and no doubt were, in some instances and to some extent; but such waivers were obviously only partial. No letter found in the correspondence set forth in the former opinion, or in the present record, signified any purpose or intent to take up and pay for lumber not actually loaded on the cars, receipted for by the carrier and invoiced.

Nor was there any promise to absolve the defendants from duty to remove lumber stored at one loading place to the other, in case shipment from the other should be desired. Nor did the contract impose any obligation upon the defendants to store lumber at Surveyor, for use in performance of the contract. They could keep it where they pleased, until called for by proper orders for deliveries. Until delivered, it was theirs and they bore the hazards of loss and injury by fires, floods, thefts and otherwise. Moreover, the plaintiff was not bound to accept any deliveries made without orders, except in so far as he waived his rights of election. No letter authorized shipment by such roads or cars, or at such times and in such quantities, as the vendors might elect, or promised inspection and payment, without delivery on board of cars of roads designated by the vendee, and he designated no road in any of the general letters relied upon. He ordered 150,000 feet of poplar lumber hauled at one time, without any indication of the places of loading or his intention as to the times at which, or the quantities in which, he would take it up and pay for it. He gave the defendants their option to haul some oak lumber. That was no order. He took up and paid for 164,919 feet of poplar, chestnut and oak, a quantity far in excess of any specific orders found in the correspondence.

Such oral testimony as tends to prove proper verbal orders or demands for lumber, made through Callaway, the plaintiff's inspector, not honored and filled, is flatly and emphatically denied by Poteet, one of the defendants and manager of the defendant corporation, the Marsh Lumber Company. He swears every proper order was filled and that the company always had ample lumber on hands with which to comply with the requirements of the contract and was ready and willing to do so, not always when ordered, but within extensions of time assented to by the plaintiff. Whether the contrary may be inferred from the correspondence and the repeated general demands and inquiries found in the plaintiff's letters and the replies thereto, as well as whether Callaway testified truthfully, was a question for the jury. There is nothing legally conclusive in them. Of course, the plaintiff

could rightfully make inquiries and there was a moral obligation upon the defendants to answer them frankly and truthfully, but they were devoid of the legal virtue and power to force the defendants to move or to put them in legal default.

Seeing no error in the trial court's rulings upon instructions and evidence, nor any ground upon which it could rightfully have set aside the verdict, we will affirm the judgment.

*Affirmed.*