# CHARLESTON.

MARTHA C. RICE *v.* WILLIAM V. RICE.

Submited February 15, 1921.   Decided February 22, 1921.

1.  DIVORCE—*Divorce from Bed and Board Properly Granted for Cruel and Inhuman Treatment.*

    A divorce from bed and board will be granted where it appears by a fair preponderance of the testimony that the defendant has on various occasions violently assaulted and beat the plaintiff, his wife, and compelled her, to save herself from further indignities, to flee from their home at night in inclement weather, and remain all or a part of the night unprotected from the violence of the elements.  (p. 56).

2.  APPEAL AND ERROR—*Decree Reversed When Against Preponderance of Evidence.*

    While great weight will be given to the findings of the chancellor upon conflicting oral evidence, still if the testimony of one of the parties is fully supported by circumstances which could not be changed or falsified, it substantially preponderates over the oral evidence of the adverse party in conflict with such circumstances, and this Court will reverse a decree entered against the party in whose favor the evidence so preponderates.  (p. 59).

3.  WITNESSES—*Acts by Party Inconsistent With Testimony at Trial Will be Considered.*

    Acts done by one of the parties to a suit prior to its institution, which are entirely inconsistent with the testimony given by him upon the trial, will be given great weight in determining what credence should be given to his oral testimony in conflict with the testimony of his adversary.  (p. 57).

4.  DIVORCE—*When Evidence as to Condoned Cruel and Inhuman Treatment May be Introduced Stated.*

    It is competent in a suit for divorce upon the ground of cruel and inhuman treatment to prove acts upon the part of the defendant amounting to such cruel and inhuman treatment, even though the same may have been conditionally condoned, for after the condition upon which they were condoned has been broken they are again brought into existence as grounds for divorce, and even though not of themselves so relied upon, evidence touching them is competent to characterize the subsequent acts of the defendant which are set up as entitling the plaintiff to relief.  (p. 59).

5.  SAME—*Appellate Court Will Not on Reversal of Decree Fix Alimony But Will Remand Cause.*

Where in a suit for divorce and alimony the relief prayed for is denied by the lower court, this Court will not, upon reversal of such decree, fix the amount of such alimony, but will enter a decree of divorce, and remand the cause to the circuit court for the entry of a decree for alimony that will do justice between the parties.  (p. 60).

Appeal from Circuit Court, Monroe County.

Suit by Martha C. Rice against William V. Rice.    Decree for defendant, and plaintiff appeals.

*Reversed, decree for plaintiff, and remanded.*

*R. L. Clark,* for appellant.
*J. A. Meadows,* for appellee.

RITZ, PRESIDENT:

In the year 1908, the parties to this suit launched their bark upon the matrimonial sea, and after a more or less tempestuous voyage the craft was wrecked in the month of December, 1916, plaintiff contends because of the defendant's cruel and inhuman treatment of her, and as alleged by the defendant, because of the plaintiff's willful desertion and abandonment of him.   Both of the parties had had the misfortune to be bereft of their respective former spouses, and the plaintiff was left with one daughter about sixteen or seventeen years of age, while the defendant, as a result of his former marriage, was the father of nine children, eight of whom were living at home at the time of the second marriage, and some of whom were of comparatively tender years. After the marital relations of the parties were permanently broken off in the month of December, 1916, the plaintiff lived part of the time with her daughter, who was then married, and supported herself as well as she could by the earnings of her labor.   It appears that her health was not good, and at times she has been compelled to subsist upon the charity of her neighbors and friends, while the defendant is the owner of a farm with considerable live stock and farming equipment thereon, from which he derives a comfortable living for himself and his remaining family.

The plaintiff in September, 1918, instituted this suit praying

for a divorce from bed and board from the defendant, and for alimony.    The ground of her complaint is cruel and inhuman treatment.    The court below referred the cause to a commissioner to take the evidence and report upon other questions submitted to him.    Upon consideration of the evidence submitted by the commissioner the court below declined to grant any relief, and dismissed the plaintiff's bill, and this appeal is prosecuted to reverse that decree.

The plaintiff testifies in her own behalf that almost from the time she and the defendant were married until the time she finally left him his conduct toward her was inhuman and brutal.   She testifies that on many occasions he beat her, whipped her, and excluded her from the house in the winter time, and compelled her to spend the nights out in the cold; that on at least one occasion, when he was under the influence of liquor, he attempted to procure one of his grown children to whip the plaintiff, and upon the refusal of this child to do so, he did it himself.   Many of the acts of cruelty and inhumanity testified to by the plaintiff are likewise testified to by her daughter.   It further appears from the evidence introduced on behalf of the plaintiff that the defendant was addicted to the immoderate use of alcoholic drinks, if indeed it can be said that there is any such thing as a moderate use of such liquors, and that during the times he was so under the influence of liquor he was very violent.   It appears that during their marital life on as many as a half dozen occasions the plaintiff left the defendant's home and lived away from him during intervals of varying length, as she contends, in order to escape his violent attacks and to prevent him from further abusing and beating her.   The defendant in his own behalf testifies that he never treated the plaintiff harshly or abusively, and if his testimony is to be believed there was nothing in his conduct that should have caused a breach of the ordinary calm of their matrimonial life.   Some of his children testify likewise that their father never abused their stepmother.  According to the testimony of the plaintiff a few days before she finally left the defendant's home in the month of December, 1916, he, in addition to brutal attacks upon her, made an indecent assault upon her daughter, who was then visiting at their home; that she then, as soon as she could get her

clothing together and make her arrangements, left the defendant's home and went to the home of her brother in Raleigh county, and since said time she has never spoken to or had any direct communication with him.     This charge is also denied by the defendant, and he contends that when she left on this occasion she told him she was going on a visit to her brother in Raleigh county; that their relations at the time were entirely amicable; that he furnished her the money to make the trip, and that when she returned and went to live at another relative's he sent one of his sons to her to request her to come home, which she refused to do. In this he is coroborated by several of his children.     The oral evidence as to the conduct of the defendant towards the plaintiff in the particulars complained of is highly conflicting.     It is necessarily in large part confined to the testimony of themselves, because of the intimate personal relations existing between man and wife, and were it not for some things appearing in this case independent of the testimony of either of the parties we would hesitate to disturb the findings of the lower court upon this conflicting state of the evidence.

To these things we will now advert.     It appears that in the summer of 1915, after the plaintiff had left the defendant, as she claims because of excessive abuse and extreme cruelty toward her, she at his instance agreed to return upon his executing a writing promising that in the future his former conduct would not be repeated.     By this writing he binds himself not to again break the peace toward the plaintiff, and while it is true that the plaintiff likewise signed this writing, the only thing that she agreed to do by it was not to reproach him with his past conduct.     This writing is a clear admission upon his part that he had been guilty prior thereto of breaches of the peace toward the plaintiff, and is a solemn admission by him of the falsity of the evidence he has given upon this hearing.

Another item of evidence of very great weight is the fact that sometime prior to the execution of this writing, acting upon the advice of some of her relatives and friends, the plaintiff caused a warrant to be issued for the defendant charging him with assault and battery committed upon her; that upon this warrant he was taken before a justice of the peace, and, upon a trial, was

found guilty and fined for the offense. The justice of the peace who conducted this trial was introduced as a witness, and he testified that at the time of the trial there was still evidence upon the plaintiff's person of acts of violence committed upon her.

It further appears that the defendant is a man in moderate circumstances, and has a farm from which he derives a comfortable living for himself and his family; that the plaintiff has nothing, and is compelled to make her living by working in the kitchens of other people, or doing such other domestic labor as she is able to obtain, and as the condition of her health will allow. Under these conditions, is it at all probable that the plaintiff would have left the defendant if, as he contends, there was nothing out of the ordinary in their marital life? It is significant that the plaintiff on at least a half dozen occasions prior to December, 1916, left his home, as he claims without any reason or exceuse, and that overtures were always made by him to have her return. It seems at no time did she ever forgive the offense with which she claims he was guilty until after he had repeatedly importuned her and made promises of reformation. He introduced some evidence tending to show that the plaintiff was unable or unwilling to get along with his children, but there is no substantial showing that the plaintiff had any more trouble with the defendant's children than is ordinarily incident to the rearing of a family of this size.

The defendant contends that while it is true that the paper writing is an admission upon his part of cruel treatment toward the plaintiff, she condoned all of his past acts at that time, and cannot now complain of them, and that this is likewise true of the acts of violence which resulted in his conviction of assault and battery upon her, as above referred to. The condonation by the terms of the writing was conditioned, however, upon his future good conduct, and of course if his contention is true that his conduct has since been reasonably free from adverse criticism, then no cause of action would exist here, but the fact that he now denies that he ever was in any wise cruel or brutal in his treatment of the plaintiff, contradicted as it is by a writing over his own signature, convinces us that his testimony as

to his subsequent conduct is entitled to little weight.   There is
no doubt, nor is it questioned, that if the defendant has been
guilty of the assaults upon the plaintiff, and of the conduct to-
ward her of which she complains, and as to which she testifies,
she is entitled to the relief for which she prays.   Such acts
clearly bring the case within the rule laid down by this Court
justifying divorce upon the ground of cruel and inhuman treat-
ment. *Goff* v. *Goff,* 60 W. Va. 9 ; *Maxwell* v. *Maxwell,* 69 W. Va.
414.

The only question is whether or not the evidence proves that
the defendant was guilty of the conduct charged against him.
It is true the court below has found in his favor, and while great
weight will be given to the conclusions and findings of the
chancellor in a case like this, still when we find that there is a
fair preponderance of the evidence in favor of the cause of action
alleged, we will not refuse to give relief.   In this case we are
of opinion that the circumstances which we have above pointed
out are of such controlling force, and so fully corroborate the oral
testimony of the plaintiff, that they compel us to hold that the
defendant's denials, inconsistent therewith, are not effective to
bar the relief prayed for.   While it may be true that the acts
of cruelty and inhumanity of which the defendant was guilty
prior to the execution of the writing of June, 1915, and which
were condoned conditionally by that writing, of themselves
would not be cause for divorce, but as we said in *Dusenberry* v.
*Dusenberry,* 82 W. Va. 135, the condonation was only condi-
tional, the condition being that the defendant's conduct would
be good in the future, and upon his failure to comply with this
condition the plaintiff's condonation can no longer be relied
upon by him as excusing these acts.   Then, too, even though his
former conduct had been unequivocally condoned, still it would
be admissible in evidence as characterizing his later conduct, of
which complaint could be properly made, and would be an in-
structive aid to the court in interpreting subsequent acts which
the conflicting testimony might render equivocal.

The defendant insists that his efforts at reconciliation, both
before and since the institution of this suit, have an important
bearing.   The plaintiff had repeatedly yielded to such offers

in the past, but notwithstanding defendant's promises of reformation there seems to have been little difference in his manner of treating his wife. He evidently believed that because he was the head of the household,

> "Therefore God's universal law
> Gave the man despotic power
> Over his female in due awe,
> Not from that right to part an hour,
> Smile she or lour."

Even if we concede that his attempts at reconciliation were in entire good faith, she was under no obligation to condone his transgressions. She had repeatedly done so in the past, and it would seem that the point had been reached where forgiveness ceases to be a virtue. If his conduct gave her ground for divorce she could stand upon it and reject any proposals coming from him, the acceptance of which, as indicated by past experience, would only result in her further humiliation and ill treatment.

Our conclusion is that the plaintiff has shown herself entitled to relief, and we will reverse the decree of the circuit court, and enter a decree of divorce from bed and board.

But how about the prayer for alimony? The circuit court has not yet considered this question. Ordinarily the question of what alimony is to be allowed is one resting in the sound discretion of the trial court, which will not be reviewed unless it appear that injustice has been done to one or other of the parties. That the plaintiff is entitled to alimony there can be no doubt. *Kittle* v. *Kittle,* 86 W. Va. 46. 102 S. E. 799. Ordinarily, however this court will not pass upon a question upon appeal which has not been passed upon by the court below, but will remand the cause for the purpose of having such question determined with the right, of course, to either of the parties to review by appellate process such determination, should they conceive themselves to be aggrieved thereby. *Nuzum* v. *Nuzum,* 77 W. Va. 202.

For the purpose of entering a decree for alimony which will

do justice between the parties we will remand the cause to the circuit court.

*Reversed, decree for plaintiff, and remanded.*