# CHARLESTON.

CLEMMER *v.* BOWLBY

(No. 6656)

Submitted April 23, 1930. Decided April 29, 1930.
(Rehearing Denied May 29, 1930.)

*Frank Cox, Charles T. Herd,* and *Frank P. Weaver,* for plaintiff in error.
*Frank P. Corbin* and *Moses M. Darst,* for defendant in error.

WOODS, JUDGE:

This is an action on three several promissory negotiable notes, dated the 12th day of March, 1928, and payable one day after date to the order of W. Lloyd Morris, each calling for $1,000, and all payable at the Union Bank & Trust Company of Morgantown, and signed by the defendant, Robert H. Bowlby, and indorsed on the back by the payee. Defendant prosecutes error from a judgment for plaintiff in the sum of $2,800 on the ground, among others, that the trial court, sitting in lieu of a jury, ignored his equitable defense.

It appears that for some time prior to the 1st day of November, 1927, the Auto Supply & Repair Company, a corporation, of which W. Lloyd Morris was president, general manager, and the owner of all the stock except qualifying shares, was

carrying on at retail a gasoline and motor oil and automobile accessories business in Morgantown, in premises leased by Morris from Ben Green and sub-leased by Morris to the Auto Supply & Repair Company. After some preliminary negotiations between Morris and defendant the supply company and Morris, by a certain writing, bearing date November 1, 1927, transferred the gasoline and motor oil business to the defendant in consideration of $10,000, the first installment of $5,000 being paid in cash. Concurrently therewith, and as a part of the same transaction, Morris and the supply company sublet to defendant, at a rent of $1,000 a month, a part of the premises then under lease by Green to Morris. The contract transferring the business provided among other things, that if Bowlby desired them to do so the said supply Company, if in existence on September 1, 1928, and if not, then W. Lloyd Morris for himself, would repurchase from Bowlby, on that date, the said gasoline and motor oil business and all equipment belonging thereto, sold to said Bowlby by said contract of November 1, 1927, and to pay therefor to said Bowlby all of the purchase money theretofore paid by him, and deliver to him any unpaid notes representing installments of said purchase money, "and to relieve the said Bowlby of any and all financial obligations in connection with the said business"; that the said sublease, bearing even date and executed concurrently therewith, is a part of the consideration for the money paid and to be paid by Bowlby, and that the monthly installments of rent to be paid for the sublet premises is a further consideration for the said lease; that if the said supply company or Morris should repurchase said gasoline and motor oil business, as provided in said contract, then the sublease so made to said Bowlby should be canceled and terminated thereby.

The three notes in question had been executed by the defendant to pay the January, February, and March, 1928, installments of rent under the sublease, since the revenue arising from the business was insufficient to meet the current expenses. These notes were transferred by Morris, the payee thereof, to plaintiff on May 31, 1928, as collateral on a $2,800 note

given by the former to plaintiff in exchange for a check for that amount. From the facts introduced in evidence in support of defendant's equitable plea under chapter 126, § 5, Code, it appears that the gasoline and motor oil business was not doing as well as Morris has represented to Bowlby, that the revenue therefrom had not been sufficient to meet four of the monthly payments of rent, etc., and that Bowlby, fearing that Morris would not be financially able to take back the property on September 1, 1928, as provided for in the contract of November 1, 1927, sought and secured such a settlement as of June 1, 1928.

. Counsel for plaintiff admit that Clemmer stands on no higher plane than Morris; that, as a bona fide purchaser for value of an overdue negotiable instrument, he holds it subject only to such equities as attach to the instrument itself at the time of the transfer. *Davis* v. *Noll,* 38 W. Va. 66, 17 S. E. 791, 45 Am. St. Rep. 841. So the chief issue between the parties is whether or not the notes were impressed with any equities in favor of defendant at the time they came into the hands of the plaintiff. The term equities, as used above, does not embrace set-offs or counterclaims held by the defendant against the payee or other transferor of the holder, and arising from collateral transactions; but only those defenses inherent in or directly connected with the contract giving rise to the instrument itself. Bigelow on Bills, Notes & Checks (3d Ed.) 445. In other words, one who acquires negotiable paper after maturity takes it, in the absence of statutory modification, subject to all equities and defenses arising out of the paper itself and attaching to it, or out of the transaction with reference to which the paper was made, or of any agreement between the original parties with relation to the instrument. 3 R. C. L. 1045. Plaintiff proceeds on the theory that no equities existed prior to the settlement of June 1, 1928, which he attempts to show had been agreed upon some days subsequent to such date. The notes were delivered, as he contends. May 31, 1928.

But just what was Morris' position in relation to the notes sued on at the time of the transfer? As already stated, he had

agreed in the writing of November 1, 1927, to take the property back on September 1, 1928, and to repay all purchase money theretofore paid by Bowlby, and deliver up any unpaid notes representing installments of said purchase money, and to relieve the said Bowlby of any and all financial obligations in connection with the business—in other words, make defendant whole. In view of such a situation, could Morris have recovered judgment by a suit on the notes? It is apparent from the contract that Bowlby expected the business not only to take care of the rental of $1,000 per month and his monthly salary, etc., but to yield a profit as well, and that, if it failed in such particulars, he would require Morris to take back the property in accordance with the contract. The notes in question were not given merely on assurances of Morris that business would open up in the spring, but in view of his contractual obligation to make Bowlby whole. The lease, as we construe the contract, was a part of the transaction. The notes were necessarily covered by the contract; otherwise Bowlby could not be made whole. As we see it, the notes were impressed with an equity of Bowlby prior to their delivery to plaintiff.

The equities having attached long prior to the date of the transfer of the past-due notes, the several other questions raised in regard to when the agreement of June 1, 1928, was actually entered into; as to the time when defendant became aware of the transfer of the notes; and certain procedural matters, become immaterial.

In view of the situation presented in this case, the defendant has an absolute defense against the plaintiff's case. The judgment must therefore be reversed, and nil capiat entered.

*Reversed and rendered.*