CECIL B. HIGHLAND, *Executor, etc. v.* J. HORNOR DAVIS, *et al.*

(No. 8927)

Submitted September 12, 1939. Decided October 24, 1939.

*Robinson & Stump, John S. Stump, Jr., Lawrence R. Lynch, Hoffheimer & Stotler* and *Geo. M. Hoffheimer,* for appellant.

526

*Robert S. Spilman, Steptoe & Johnson* and *James M. Guiher,* for appellees.

MAXWELL, JUDGE:

This suit, instituted by Cecil B. Highland, executor and trustee of the last will of Virgil L. Highland, deceased, plaintiff, against J. Hornor Davis, The Exponent Company, a corporation, J. Horner Davis and Anthony F. McCue, trustees, and Clarksburg Publishing Company, a corporation, defendants, has for its purpose the cancellation of a sale February 17, 1935, by Davis to The Exponent Company of a block of 568 shares of the common stock of the Publishing Company, which stock had been pledged by Virgil L. Highland in his lifetime to secure a note executed by him, and which stock was re-pledged by his executors at a later time to secure a note for the unpaid portion of the original debt.

On the first review hereof (*Highland* v. *Davis,* 119 W. Va. 501, 195 S. E. 604) this court reversed the trial chancellor's decree cancelling the sale, and remanded the case for further proceedings. On the remand the sole question left open by this court for the trial chancellor's decision was whether the price for which the stock was sold was so grossly inadequate as to indicate bad faith. Specifically, we said: "Unless, on the remand, the trial chancellor should arrive at the conclusion that the price was so grossly inadequate as to indicate bad faith, the sale should not be set aside and the plaintiff should not be entitled to redeem." Our opinion concluded: " * * * we reverse the decree of the circuit court and remand this case to be dealt with in accordance with the principles herein contained."

After the case had been recommitted, the circuit court gave further attention thereto, on the record as it had been developed prior to the first appeal; considered only the question of value; ascertained that there was no gross inadequacy in the price for which the stock had been sold, and dismissed the plaintiff's bill by decree entered

January 9, 1939. From that decree the plaintiff was awarded this appeal.

Soon after the case had been returned to the circuit court the plaintiff entered, under date of April 18, 1938, several motions, among which were the following: (1) That the court set aside and vacate the order of submission which had been entered July 14, 1936; (2) that if that motion be overruled the court set aside so much of the submission order as is inclusive of the question of adequacy or inadequacy of price; and (3) "that the plaintiff and defendants be granted leave to adduce, take and file further evidence, by depositions and documentary evidence, or either of them, in respect of the gross inadequacy, or the contrary, of the price at or for which said The Exponent Company acquired, or purported to acquire, said voting trust certificate."

The trial court overruled all of these motions and others made by the plaintiff on the same date. Later, after full argument, the court took the case under advisement and subsequently entered final decree as above stated.

The appellant assigns as error the court's adverse ruling on the motions of April 18, 1938, also the finding of the court in its final decree of January 9, 1939, that the price paid for the stock was not grossly inadequate, and its dismissal of the plaintiff's bill.

The trial court's declination to open for reconsideration the questions other than price and value of the stock. was in entire accord with this court's opinion and mandate on the former review. This court, having specifically ascertained that there was no fraud independent of price, referred that sole matter back to the trial court, and that court correctly interpreted our action in that particular.

On the present appeal it is vigorously and ably urged on behalf of appellant that the appellate court's original decision herein was erroneous and should now be corrected; that the rule known as "law of the case" is not absolute but yields to the ends of justice where on a later review of a case the court ascertains that it initially committed error. We recognize that, within defined limita-

tions, this court may alter or depart from its prior decision in the same case. *Wiggin* v. *Marsh Lumber Co.,* 79 W. Va. 651, 91 S. E. 532; *Pennington* v. *Gillaspie,* 66 W. Va. 643, 66 S. E. 1009. But the "law of the case" will not be departed from except where the court has become convinced that in the first instance it erred, and that a different course must be pursued in order that justice may be done. *Atwater & Co.* v. *Fall River Pocahontas Collieries Co.,* 119 W. Va. 549, 195 S. E. 99; *Shipper* v. *Downey,* 119 W. Va. 591, 197 S. E. 355, and cases cited.

For the reasons set forth for the court by Judge Riley in our first decision, the majority of the court are of opinion that the case, to the extent of the disposition thereof by that decision, was correctly decided and should remain closed.

Passing reference is here made, however, to the position repeatedly urged on behalf of the plaintiff that he was lulled into a sense of security by a representation which was made to him in February or March, 1934, by John Sabotka, a field agent of the Reconstruction Finance Corporation, Richmond, Virginia. With reference thereto Highland testified that "he (Sabotka) assured me that he would not embarrass the Highland estate. That all they desired was to pay the interest and let the principal ride until conditions get better." Some months later, however, under date of August 29, 1934, Highland received from H. G. Gilmer, Manager for the Loan Agency of the Richmond office of the Finance Corporation, a letter as follows:

"In February of this year we advised you that the Reconstruction Finance Corporation is the lawful holder of a note signed by you as maker or endorser in the sum of $45,000., dated 9/24/33, due 1/22/34 in favor of the West Virginia Bank, Clarksburg, West Virginia. Our letter requested that payment be made either to this Agency of the Reconstruction Finance Corporation or to our field representative, Mr. John A. Sobotka. (Elsewhere in the record "Sabotka".)

"We are now writing to advise that it will be satisfac-

tory for you to make payment as indicated above, or to the Receiver of the above bank."

This letter reminded the plaintiff of the request which had been made the preceding February that payment be made either to the Richmond agency or to Sabotka. Further, the letter advised that payment might be made to the Receiver of the West Virginia Bank, as well as in the manner theretofore indicated. The basic thought of this letter was "payment", and there was no intimation therein that the matter was being held in abeyance until conditions improved, or that extended delay was anticipated with reference to this long-overdue note. Though the letter contained no demand for immediate payment its tenor was such as to put on Highland the responsibility of ascertaining with definiteness the limitations, if any, that were to be placed by the Richmond agency on the Sabotka representation which had been made five or six months previously, and whether, in fact, the Richmond agency had been informed of and was in accord with the assurance which Sabotka had given verbally to Highland. It would seem that the receipt of that letter by Highland might very well have disturbed his feeling of security which had been occasioned by the Sabotka statement. So, we have been and are unable to ascribe to the oral representation made by Sabotka the dominating and controlling effect sought to be accorded it by the able counsel representing Highland.

Recurring, however, to the matter immediately before us on the instant appeal, we are confronted with the query whether there was prejudicial error in the trial court's refusal to permit the taking of further evidence on the question of price. Plaintiff's motion (designated number three hereinabove) of April 18, 1938, pointedly requested that such course be taken, and motion number two was in accord. We are of opinion that these two motions should have been sustained, and that there was prejudicial error in the court's refusal thereof.

When the evidence in this case was being developed the question of adequacy of price, though given extended

consideration, was, in fact, within the contemplation and belief of the parties to the suit and their counsel, simply a non-paramount element of the controversy whether there was fraud or inequitable conduct in the stock sale under attack. But this court, on the first appeal, after having disposed of all other elements of the case, set off to itself and isolated the question of price, and made the whole case to turn ultimately on that point. The importance of the adequacy-of-price problem having been thus emphatically accentuated, we are impressed that proper and orderly administration of justice requires that there be granted leave to take further testimony pertaining solely to that problem. Otherwise, it would appear, that this court, after having restricted the ultimate issue in a manner which the parties were not under the duty of anticipating, had later foreclosed the right of full development of the case in the light of the restricted issue imposed by the court.

Opportunity should be afforded the parties to adduce and submit, and have considered by the trial court, on the question of adequacy or inadequacy of price, together with the competent evidence now in the record, such further, legal and pertinent evidence as they may be advised is proper.

In consequence of all which we reverse the trial court's decree of January 9, 1939, and remand the case for further proceedings not at variance herewith.

*Reversed and remanded.*

HATCHER, JUDGE, dissenting in part, concurring in part:

I respectfully dissent from point 2 of the syllabus for reasons stated in my dissent to the former decision. Since this opinion has reopened the Sabotka incident, I repeat, for convenience, my former observations thereon.

"John Sabotka was the field agent of Finance Corporation. Cecil Highland testified, without contradiction, that in February or March of 1934, Sabotka, after obtaining information of the condition of the Highland estate and

of the value of the collateral on the note in question, 'assured' the witness 'that he would not embarrass the Highland estate, that all they (Finance Corporation) desired was (for Highland) to pay the interest and let the principal ride until conditions got better.' This assurance naturally caused Cecil Highland to understand that the collateral would not be suddenly sold to pay the note, and was in effect a waiver of the right to do so. That waiver was never recalled. I do not overlook a subsequent letter to Cecil Highland from Finance Corporation, dated August 29, 1934, stating that in February, he had been requested to pay the note to Sabotka, and that the letter was to advise 'that it will be satisfactory for you to make payment as indicated above, or to the receiver of the above bank (West Virginia Bank at Clarksburg).' This letter does not purport to demand payment immediate or otherwise, and there is nothing in the conduct of Finance Corporation indicating that the letter should have been taken to portend precipitate action. On the contrary, two days later, Finance Corporation filed proof of its claim (the note) against the Highland estate, before the commissioner of accounts, who had in charge the settlement of the estate. This act indicated that Finance Corporation would await the result of that settlement, at least for awhile, and lulled Cecil Highland into a deeper sense of security regarding the collateral with the note. A construction that the letter of August 29th was a demand for immediate payment, and as such terminated the understanding between Cecil Highland and Sabotka, would be so strained, I could not countenance it. That the right to sell collateral without notice may be waived by a pledgee 'either by express terms or a course of dealing', is said to be 'a well-established principle in every system of enlightened jurisprudence.' *Miller & Co.* v. *Lyons*, 113 Va. 275, 289, 290, 74 S. E. 194, 200. No new or independent consideration is required to support such a waiver. *United States Trust Co.* v. *Blundon*, 42 App. (D. C.) 500; *Toplitz* v. *Bauer*, 161 N. Y. 325, 55 N. E. 1059, 1061; Fletcher, *supra*, sec. 5662. In case of waiver a subsequent sale without notice is unauthorized. *Musser* v. *Mc-*

*Cormick & Co.,* 57 Utah 62, 67-8, 192 Pac. 1052; Fletcher, *supra;* 59 C. J. Pledges, sec. 255. It is therefore apparent to me that Finance Corporation could not have sold the collateral lawfully without notice to the Highland estate. 'The pledgee doubtless has the right to exact strict performance of the contract according to its terms, and, upon default in the payment of the debt at the time stipulated, he may, under a contract like this, dispose of the pledge. But if he waives the right to exact strict performance, and gives time and indulgence to the debtor, he cannot recall this waiver at his own option, without notice to the pledgor, to the end that the latter may have an opportunity of protecting the pledge. The good faith which the law exacts from a person dealing with trust property will not permit the pledgee, after having once waived the forfeiture or the right to dispose of the pledge upon default of payment at the prescribed time, to suddenly stop short and insist upon the forfeiture for the nonpayment of the debt when the other is unprepared to redeem.' *Toplitz* v. *Bauer, supra.* When Exponent purchased the Highland note it was overdue. Therefore Exponent took the note subject to Sabotka's waiver of the right to sell the collateral without notice. 'One who acquires negotiable paper after maturity takes it, in the absence of statutory modification, subject to all equities and defenses arising out of the paper itself and attaching to it, or out of the transaction with reference to which the paper was made, or of any agreement between the original parties with relation to the instrument.' *Clemmer* v. *Bowlby,* 109 W. Va. 105, 153 S. E. 311, 312. The majority opinion recognizes the sequence, saying not once, but twice, that Davis 'stood in the shoes of the Reconstruction Finance Corporation.' But he and Exponent kicked off the shoes, and the opinion excuses that breach of trusteeship, seemingly because of the personal antagonism existing between them and Cecil Highland. No authority is cited and I have found none which justifies a pledgee's violation of his trust because he is at outs with the pledgor."

I concur in the reversal and would supplement the majority opinion in this manner. Gross inadequacy of price is a relative term. While a large sum of money may be required to constitute gross inadequacy in some instances, a small sum—a few dollars—may be sufficient in others.

KENNA, JUDGE, dissenting:

The bill of complaint, filed in this cause on the twentieth day of March, 1935, contains the following allegation:

> "Complainant further avers that if the pretended sale of said 568 shares to said The Exponent Company is permitted to stand, your complainant will suffer great loss and irreparable injury in that he is thereby deprived of the said 568 shares at a fictitious and wholly inadequate sale price, and in addition to the immediate loss by reason of the great difference between the actual value on February 17, 1935, of said 568 shares and the pretended sale price thereof, * * *."

The answer of J. Hornor Davis, filed May 13, 1935, before proof was taken, which began July 12, 1935, contains the following averment:

> "Your defendant denies that if the sale of said 568 shares of Class A stock to said The Exponent Company is permitted to stand the plaintiff Cecil B. Highland will suffer great loss and irreparable injury in that he is thereby deprived of the said stock at a fictitious and wholly inadequate sale price, or that in addition to the immediate loss by reason of the alleged great difference between the actual value of said 568 shares on February 17, 1935, and the sale price thereof, the remaining 1088 shares of said Class A stock owned by said plaintiff are or will be greatly depreciated in value, * * *."
>
> * * * *
>
> "Your defendant further says that neither your defendant, nor said defendant The Exponent Company, have had, or have now, any desire or intention of profiting at the expense of said Virgil L. Highland estate; that the price paid for said

stock, as your defendant verily believes, is in fact substantially more than its actual value, and all that was or is sought to be accomplished by the purchase of said stock is a reasonable means of protection against the ruinous activities on the part of said Cecil B. Highland personally in the business of said Clarksburg Publishing Company. * * *."

The separate answer filed by the Exponent Company on the same day contains substantially the same denials and the same affirmative allegations; so that there can be no doubt that the adequacy of the sale price, dependent upon the market value, if any, or the actual value otherwise, under the pleadings was one of the material issues of fact, and, furthermore, that that issue related entirely to the time of sale under the collateral note.

Before the final submission of the cause on July 9, 1936, there was a great deal of proof taken and a great deal of the twelve-hundred-page record is made up of testimony relating to the question of value of the stock pledged as collateral immediately preceding and on the day of sale.

The trial chancellor held in favor of the plaintiff, and in doing so practically disregarded the sale price of the collateral stock and held, substantially, that the motive that influenced and brought about the sale was the controlling element, and that J. Hornor Davis was to be regarded as a pledgee and that he had, as such, violated a fiduciary duty that he owed the pledgor or complainant.

It has been necessary to review the record upon the former appeal of this cause and although, presumptively, what may be called a quasi-fiduciary relationship arises between the original pledgor and the pledgee, and extends to the maker and holder of collateral notes, I think that it carries that assumption entirely too far to say that a fiduciary duty rested upon J. Hornor Davis as the pledgee in favor of the pledgor under the circumstances shown by this record. The pledgor is charged with knowledge that his interest and the pledgee's are at times dissimilar. Highland and Davis were standing at arm's length, and that fact cannot be questioned. Of course,

that would not justify a deceitful or fraudulent course of conduct on the part of the pledgee, and it may be simply mincing words to undertake to distinguish between affirmative fraudulent conduct that no individual may pursue toward another and avoid responsibility for resultant injury, and the non-performance of a fiduciary duty, but there was no reason for Highland to suppose that his collateral would remain in friendly hands or that the bank would not dispose of it. Bad faith resulting in a plainly inadequate price he could expect to be protected from, but to charge the pledgee with duties beyond that would be to impose additional duties instead of giving effect to the express terms of the collateral note, the purpose of which is to minimize the payee's obligation toward the payor.

The language of this Court in the former opinion bearing upon the inadequacy of the purchase price is as follows:

> "On the question of the inadequacy of the price, the evidence is in conflict; yet in solving the question of good or bad faith, the trial chancellor did so without considering whether or not the price was grossly inadequate as a badge of bad faith, as shown by the court's opinion, incorporated as part of the decree, and the adjudication of court on the motion to strike. (See case of *Robertson* v. *Vandergrift et al.,* 119 W. Va. 219, 193 S. E. 62, as to effect of opinion of trial court). On this point alone, the case should be remanded. This court will not, in the first instance, consider questions not yet acted upon by the trial court."

I have examined the cases cited at this point in the former opinion and am under the impression that in refraining from entering a final decree here in favor of the defendant this Court treated the plaintiff with more liberality than that to which he was entitled. The case of *Rice* v. *Rice,* 88 W. Va. 54, 106 S. E. 237, was a divorce proceeding in which the trial chancellor, because of what he considered was insufficient proof, had dismissed the

plaintiff's bill on final submission. The weight of the evidence having been considered below, this Court entered a decree in favor of the plaintiff and remanded the cause for the sole purpose of having the question of alimony passed upon—not the merits that had already been considered. In the case of *Nuzum* v. *Nuzum,* 77 W. Va. 202, 87 S. E. 463, the trial chancellor, on final submission, had dismissed the bill for the reason that in his opinion there was an adequate remedy at law. The decree was reversed and the cause remanded because the merits had not been considered by the trial chancellor. The other cited cases bear upon issues not considered by the trial court. In this case the merits of the cause, together with full proof, had been fully considered on the first submission, and the error consisted in giving too much weight to the supposed purpose of the pledgee, and too little weight to the adequacy of the purchase price of the pledged stock. This Court simply remanded with implied directions to correctly rule on the evidence which had been fully developed, though erroneously scrutinized. On the chancery side, I think this was not necessary.

The additional proof that the plaintiff tendered upon the first remand, I think, the trial chancellor very properly declined to consider because it was either cumulative only or it concerned nothing more than the value of the stock subsequent to the day of sale, which has very little, if any, bearing on the adequacy of the sale price. Its subsequent value might logically be attributed to the fact that the control of the Publishing Company had changed hands. Furthermore, if the value of the stock subsequent to the day of sale is relevant, at what time would the evidence of value become too remote to be considered?

There was a written offer of settlement made by J. Hornor Davis which was filed as an exhibit with his answer and, in so far as the value of the collateral stock was concerned, entirely does away with the notion of a fraudulent purpose on his part. It involves a cancellation of the sale, a year's renewal of the collateral note

with no curtailment required and no payment of interest beyond the date of renewal, and imposes upon the pledgor only that Highland shall, by written stipulation, renounce his right and qualification to become a voting trustee, director, officer or manager of the Clarksburg Publishing Company and all control of the editorial policy of the Clarksburg Telegram. This offer was not even considered, and, of course, complainant could not be expected to relinquish his right as one of the testamentary trustees of the Virgil Highland estate. Nevertheless, I believe it is relevant as disclosing Davis' purpose and intention.

Summing up, it is my belief that to remand this cause for the taking of further proof on the question of an inadequate price involves nothing more than a question which has already been correctly decided by the trial chancellor. Code, 58-5-25; *Huntington, etc., Company* v. *Topping,* 115 W. Va. 364, 176 S. E. 424; *Shikes* v. *Gabelnick,* 273 Mass. 201, 173 N. E. 495, 87 A. L. R. 1339; *Arrington* v. *Sizemore,* 241 Ky. 171, 43 S. W. (2d) 699.