# CHARLESTON.

Lillie Bishop Kittle v. G. Bruce Kittle.

Submitted March 16, 1920.　Decided March 23, 1920.

1. Divorce—*After Desertion for Three Years, Plaintiff May Elect to Sue for Divorce from Bed and Board Only.*

    Although our statute makes desertion for three years ground for absolute divorce, plaintiff is not bound after that period to sue for all the relief to which he or she may be entitled, but may elect to sue for divorce from bed and board only.　(p. 49.)

2. Same—*General Statute of Limitations Has no Application to Divorce Suits.*

    Section 12 of chapter 104 of the Code, our general statute of limitations, has no application to suits for divorce.　Suits for divorce being cognizable only in equity, are controlled solely by principles of equity, and the general statute of limitations does not apply.　(p. 50.)

3. Same—*Trivial Indiscretions of Wife After Desertion by Husband Do Not Justify Denial of Alimony, etc.*

    Indiscretions of the wife after desertion of her by the husband of a trivial character, or which would not entitle the husband to a decree of divorce from bed and board against her, will not justify the court, in a suit by her against him for divorce, in denying her temporary or permanent alimony and suit money.　(p. 51.)

4. Same—*Defendant Estopped by Prior Decree Against Defensive Matters; Record of Prior Decree May be Pleaded.*

    In a subsequent suit by the wife against her husband for divorce, the defendant is concluded and estopped by a prior decree of the same or another court, from setting up the same matter or matters of the same character in defense of the suit or as justifying desertion, on which he was denied relief in his suit against her, and the record of such prior decree may be pleaded and relied on as evidence of his abandonment of plaintiff without good cause.　(p. 52.)

5. Same—*That Wife Has Unproductive Estate Does Not Warrant Denial of Alimony.*

    The fact that the wife has real and personal estate, but practically no income therefrom, from which she can derive

support, will not warrant the court, in a suit by her, in denying her temporary or permanent alimony or suit money. The husband is bound to support his wife, according to his financial ability, out of his income, which is the proper basis of any decree against him, and the wife's capacity to earn a living or her ownership of such separate estate, can not be properly taken into consideration. (p. 54.)

6. SAME—*Wife Need Not Use Her Separate Estate to Prosecute or Defend a Suit.*

· A wife is not bound to invade the corpus of her separate estate to prosecute or defend a suit for divorce when the husband has ample income from which he can supply her with the necessities of life and protect her against his wrongdoing. (p. 55.)

7. SAME—*Court Cannot Deprive Plaintiff Wife of Dower or Marital Rights.*

Where a wife is decreed a divorce a mensa, the court pronouncing such decree can not lawfully deprive her of her dower or other marital rights in the husband's estate. So long as the bonds of matrimony remain unbroken, she can not be deprived of such marital rights in her husband's property. (p. 55.)

Appeal from Circuit Court, Barbour County.

Bill for divorce by Lillie Bishop Kittle against G. Bruce Kittle, with answer and cross-bill for divorce a vinculo and from bed and board. From a decree denying allowance of alimony pendente lite and attorney's fees, from the overruling of her demurrer to the matter of the cross-bill and her exceptions to sufficiency of the answer to her bill, and from a final decree awarding her a divorce from bed and board, without alimony or suit money, complainant appeals.

*Reversed in part. Affirmed in part. Remanded.*

*Walker & Byrer,* for appellant.

*J. Blackburn Ware, Frank G. Kittle* and *Ira E. Robinson,* for appellee.

MILLER, JUDGE:

Divorce from bed and board was the subject matter of plaintiff's bill; and in the defendant's answer he not only controverted the grounds of divorce relied on by plaintiff, but undertook to set up against her matter for affirmative relief and for

a decree a vinculo and from bed and board. Defendant demurred to the plaintiff's bill; and plaintiff excepted to and demurred to the defendant's answer, as not constituting a good defense nor pleading matter justifying the affirmative relief sought. Defendant's demurrer to plaintiff's bill was overruled. Her exception to his answer was also overruled. But the court sustained her demurrer to the matter of the cross-bill in so far as it sought, on the grounds alleged, a decree a vinculo against her. After the issues were made up on these pleadings by general replications and special reply of the plaintiff to the defendant's cross-answer, the cause was referred to a commissioner, who took the testimony of witnesses and made certain findings of fact and omitted to make certain other findings to which report the defendant excepted on certain grounds, mainly that the commissioner had omitted to find certain facts which it was conceived were justified by the evidence.

Plaintiff's appeal involves three decrees: The first of March 7, 1918, entered shortly after the institution of her suit, denying her an allowance of alimony pendente lite, suit money and attorney's fees; the second, entered March 5, 1919, overruling her demurrer to the matter of the defendant's cross-answer, and also her exceptions to the sufficiency of his answer to the matter of her bill; third, the final decree upon the merits, whereby she was awarded against defendant a divorce from bed and board, but was denied alimony, either temporary or permanent, and suit money for the prosecution of her suit in the circuit court and also for the prosecution of her appeal to this court then applied for.

Plaintiff seeks to reverse the decrees below only in so far as they deny her temporary and permanent alimony, counsel fees and suit money, and undertook to deprive her of her marital rights in the defendant's property. It is manifest that the errors in the two prior decrees were all carried into the final decree, and being so involved, we need not consider separately the errors in the interlocutory decrees, for disposition of the errors assigned in the final decree will dispose of them.

So the main question to be considered in the plaintiff's appeal is whether she was entitled to temporary alimony, suit money and counsel fees, and on final decree to permanent alimony. It

is conceded by counsel for appellant that the circuit court may in its discretion withhold such allowances, at least until the case has been so far developed as to disclose the rights of the parties; but counsel contend that on final decree the court has no right, except for good cause, not presented by the record here, to deny alimony, temporary or permanent, and suit money or counsel fees. Defendant cross-assigns error and seeks not only reversal of the decree a mensa in favor of plaintiff, but justifies the denial of alimony, temporary or permanent, and suit money, upon the following comprehensive grounds: First, for want of equity in the bill; second, upon the ground that the commissioner found and the court decreed that the plaintiff was not free from blame for the desertion of her by her husband; third, because the plaintiff failed to sustain by proof the allegations of her bill that defendant had deserted her without justifiable cause; fourth, that the plaintiff was possessed of a substantial amount of property, real and personal, and was shown to have earning capacity as a seamstress, by which she could maintain herself; fifth, that the defendant on the matter of his cross-bill was himself entitled to a divorce from plaintiff, denied him by the final decree.

The alleged want of equity in the bill is founded upon two theories, (a) that as the alleged desertion by defendant occurred more than three years before suit brought, divorce a vinculo, warranted by the statute, only could be decreed plaintiff, and (b) that as more than five years had elapsed before suit brought, she was barred by the general statute of limitations, section 12 of chapter 104 of the Code.

The first point, we think, is wholly unfounded in law. It is true our statute makes desertion for three years ground for divorce a vinculo, but it does not require the injured spouse to sue for full relief or none. The policy of our law is to discourage divorce. By providing for divorce a mensa, it encourages reconciliation. To construe the statute as counsel for defendant construes it, would result in encouraging collusive practices by the parties to obtain divorces. Then all the offending party would have to do to obtain a complete divorce would be to absent himself for the required period. It does not matter that desertion for three years is cause for divorce a vinculo, if

properly construed the statute gives the complaining party right of election to sue for the one or the other kind of relief. We are cited by counsel to 2 Nelson on Divorce §1022, who for his text cites *Burlage* v. *Burlage,* 65 Mich. 624. In the Michigan case the wife sued and was decreed a divorce from bed and board. She did not appeal, but the husband did. The court said if she had appealed, as the grounds alleged and proven justified it, the court would not have hesitated to grant an absolute divorce. The court chose to modify the decree notwithstanding the failure of plaintiff to appeal, basing its action on the statute of that state authorizing the court on application to decree an absolute divorce when it appeared proper to do so. In Michigan it appears that the statute relied upon by the court evinces a public policy different from our state. We have no statute doing so, nor is there any decision of this court justifying us in giving to the injured spouse relief not sought by the pleadings. So far as we have indicated an opinion upon this question by dictum or otherwise we have held that the injured party has the right of election whether he will apply for the whole relief to which he or she may be entitled, and if he is denied relief a mensa, he is not by such a decree precluded or estopped from maintaining a suit for a divorce a vinculo upon good grounds justifying the same. *Lang* v. *Lang,* 70 W. Va. 205, 208, 209; *Maxwell* v. *Maxwell,* 75 W. Va. 521; *Crouch* v. *Crouch,* 78 W. Va. 708, 713.

On the second proposition, that the general statute of limitations bars plaintiff's right, our answer is that the statute has no application whatsoever. We have no statute of limitations relating to divorce. The remedy for divorce is in equity, not at law, and it is plainly apparent that section 12 of chapter 104 of the Code, our general statute of limitations, does not in any way cover divorce. That section applies only to such actions as would survive in case a party die. If it did apply, the answer to the defendant's plea is complete in section 18 of the same chapter. The bill shows on its face desertion, the acquisition by defendant of a residence in Nevada immediately after his desertion, and that he continued to maintain his residence there up to the time of this suit. Said section 18 eliminates from the period of limitations the time of his absence. Divorce being the subject of equity cognizance, in the absence of any statute only principles

of delay or laches in the bringing of the suit could apply. That the general statute of limitations has no application in cases of divorce is well settled by the authorities. 1 Nelson on Divorce, §517; 2 Bishop on Marriage, Divorce and Separation, §§426, 639. We have not overlooked section 10 of chapter 64 of the Code, relating to adultery as grounds of divorce, denying to the courts right to decree a divorce on that ground occurring more than three years before the institution of the suit.

Our next subject of inquiry is, was the decree denying alimony and suit money justified on the theory that plaintiff was not wholly without fault in bringing about the separation? Regardless of the finding of the commissioner and the decree, the court awarded the plaintiff a decree a mensa, which would be inconsistent with the theory of fault on her part; for if she was at fault, she would not be entitled to relief. We have carefully considered the evidence on which the commissioner and the court found plaintiff not without fault. In our opinion these findings are not justified by the evidence, and so far as the defendant is not concluded by the decree of the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, which denied to him a decree of divorce against plaintiff, the evidence relates solely to the supposed indiscretions of the plaintiff in being seen on the streets of her native town, after the separation, with a prominent business man residing there and boarding at the same restaurant or boarding houses where the plaintiff after the separation had secured board. It is conceded that the commissioner found that there was not the slightest evidence of criminality between these persons; and both explain the circumstances of their being together on the street on the way to and from their boarding house, and once accidentally meeting each other on a train, the plaintiff having been on a visit to her sister at Clarksburg, and the other party returning home after an absence on business, and also the fact that they exchanged small gifts of flowers and handkerchiefs at Christmas time, when boarding at a boarding house kept by Mrs. Robinson, with whom they also exchanged small gifts. We think these facts and circumstances too trivial to justify the inference of wrong doing. After defendant's desertion of plaintiff she was deprived of a home by the deaths of her father and mother, and

the circumstances under which she was placed thereafter were mainly due to the desertion of her by the defendant.

The third ground relied upon to support the decree denying alimony and suit money, that the plaintiff failed in the burden of showing the desertion was without her fault, is met, in part at least, by the plea of former adjudication by the court in Nevada and by the record of the proceedings in that court introduced in evidence. Practically every ground set up in the answer of defendant to defeat the plaintiff in this cause, with perhaps the one exception covered by paragraph 4 (e) of the cross-bill, were those relied upon by defendant in the Nevada court, where the plaintiff here appeared and made her defense, and where the defendant here failed to obtain a decree of divorce against her. To justify abandonment the conduct relied on must be such as to afford grounds for divorce from bed and board. *Reynolds* v. *Reynolds,* 68 W. Va. 15; *Alkire* v. *Alkire,* 33 W. Va. 517; *Martin* v. *Martin, Id.* 695. At most the allegations of the answer to the present bill, with the exception noted, substantially the same as the allegations of his bill of complaint in the Nevada court, amount to nothing more than criticism of plaintiff for having disagreed with him on their wedding trip, as to a loan of money about to be made by defendant to his cousin in another state without taking a note or other security therefor; her expressions of dissatisfaction with him, a traveling salesman, absent from home a greater part of the time, in spending his time with his parents, and neglecting her residing with her parents in the same town; to the criticism of defendant's brothers and sisters, and of her alleged quarrelsome disposition, and other complaints of this character; all of which were denied by plaintiff or explained in her testimony, and as to which, unless it be the subject matter of paragraph 4 (e) of defendant's answer, the defendant is concluded by the adjudication against him in the Nevada court.

The next subject of inquiry presented to us is, can the decree denying alimony and suit money be sustained on the new matter of paragraph 4 (e) relied on? The commissioner found as a fact that the allegations therein, of unnatural and disgusting desires and propensities on the part of plaintiff were not sustained by the proof, and one of the exceptions of defendant to

the report related to this subject, which, with his other exceptions, was overruled. We think the finding of the commissioner was fully justified, and the action of the court in overruling his exceptions was right. But if it were true as alleged in the answer, the fact, as we decided in *Huff* v. *Huff*, 73 W. Va. 330, where the allegations of defendant's answer were substantially the same as defendant's allegations in this case, constituted no good ground for the breaking off of the marital relation. The plaintiff, in her replication to defendant's answer and in her testimony, flatly denies the truth of this allegation, although the defendant in his testimony as vigorously affirms the truth thereof. The defendant, as corroborating his testimony, relies upon a letter which he wrote plaintiff after the institution of his suit against her in the State of Nevada, wherein he referred in an indefinite way to matters supposed to be known to her, which out of consideration for her he had omitted from his bill, but said if she wished to go into those matters he would amend his bill and give them an airing; and it is his contention that she replied to this letter, admitting the accusation but saying that what she had done was done in a fit of love or passion. Unfortunately for him she denies writing such a letter. The letter was not produced. He attempts to account for its absence by saying that it was lost by his attorneys in Nevada, but the existence of such a letter is not attempted to be established by anyone except the defendant. As corroborating the plaintiff she introduced two letters written by defendant to her immediately after he abandoned her in August, 1912, and before she was made aware of the fact of the abandonment, in which he made the most fervent protestations of his love and affection for her, and made no reference to his intent to abandon her. If he had been offended by her recent unnatural desires and propensities as he alleges in his answer, naturally he would not have left her embraces, as the evidence shows he did, so soon afterwards, and written her these affectionate letters. He attempted to explain these letters by saying that he thought it necessary to deceive her. But why deceive her, when she was so soon to be undeceived by his actions? But whatever was his purpose, they constitute plain evidence in support of plaintiff and against defendant, justifying at least the finding of the commissioner and

court that the new matter of the answer, if material and defensive, was not sustained.    Moreover, the evidence shows that after reaching Nevada and taking up his residence there, defendant continued for several months to send plaintiff twenty dollars per month for her support and maintenance.    If she had offended him in the way he now represents, giving him cause, as he alleges, for abandonment, it is unlikely that he would have volunteered this support.    But is not the defendant concluded by the decree against him in Nevada?    If the charges in the bill of complaint in the Nevada court amounted to anything, as grounds of divorce their effect was cruel and inhuman treatment, and we think the new matter charged in the answer in this case was matter of the same general character, which he could have pleaded and threatened to plead but did not.    If the matter of the cross-bill had been adultery or some other cause, of course defendant would not have been precluded by the adjudication in Nevada.    *Crouch* v. *Crouch, supra.*    Relying on cruel and inhuman treatment in the Nevada court, defendant was bound to allege acts of that character.    He could not withhold some grounds of the same character known to him, and after being denied relief rely on them in a new suit by him or in defense of a suit by his spouse against him, as acts justifying abandonment.    *Crouch* v. *Crouch, supra,* pp. 708, 713; 1 Nelson on Divorce, pp. 514, 515.

Next we have presented the question, whether the fact that the plaintiff owned real and personal estate valued at the sum of seven or eight thousand dollars, and had a net income therefrom of less than one hundred dollars per year, justified the court in denying her alimony and suit money.    The evidence shows that defendant had an income of about $250.00 per month or $3,000.00 per year.    He was in good health and had large earning powers.    In our opinion the decree denying alimony and suit money can find no just lodgment in the fact that plaintiff owned this property.    It was an inheritance from her father's estate, coming to her after the plaintiff deserted her.    Under these conditions defendant could not be excused from performing his marital duties to support and maintain his wife out of his income.    As a general rule the basis for all decrees for alimony is the income of the husband, and the amount decreed

should be in some just proportion to his ability to earn money and as will enable the wife to maintain herself comfortably in her station in life. *Reynolds* v. *Reynolds, supra; Same* v. *Same,* 72 W. Va. 349; *Henrie* v. *Henrie,* 71 W. Va. 131; *Goff* v. *Goff,* 60 W. Va. 9, 21; *Coger* v. *Coger,* 48 W. Va. 135; *Wass* v. *Wass,* 42 W. Va. 460, 464. Ordinarily the wife's estate and capacity to earn money, where the husband's income is ample and sufficient to make provisions for her, are not questions for consideration. *Sperry* v. *Sperry,* 80 W. Va. 142, 156; *Cralle* v. *Cralle,* 84 Va. 198, 200; *Miller* v. *Miller,* 92 Va. 196; *Harris* v. *Harris,* 31 Grat. 13, 17; *McKinney* v. *McKinney,* 80 W. Va. 745.

What we have just said on the question of alimony is particularly applicable to the right of the wife to permanent alimony, but the principles involved are applicable also, but in a limited sense, to temporary alimony and suit money. It is contended by counsel for defendant that our statute, section 9 of chapter 64 of the Code, limits the court in awarding temporary alimony and suit money to such sum or sums as may be necessary for the maintenance of the wife and to enable here to carry on her suit, etc., and in as much as the record shows plaintiff had estate, though no adequate income therefrom, the necessity contemplated by the statute for such allowance does not appear in this case. Numerous authorities are cited, which it is assumed support this contention; but whatever may be the law elsewhere, such is certainly not the rule in this State. A wife is not bound to go into the corpus of her estate to maintain herself or to prosecute or defend a suit for divorce. If she has ample income from her estate, to maintain herself and prosecute her suit, the court might within its discretion deny her temporary alimony and suit money; but where her income is inadequate for these purposes, the necessity which the statute contemplates is present. It is necessary for her to have money, to enable her to prosecute or defend the suit. In *Peck* v. *Marling's Admr.,* 22 W. Va. 708, this court held the husband to be liable to the counsel for his wife where the suit was for divorce a mensa because of the husband's cruelty or because of apprehension on her part of bodily harm, and she succeeded in the suit. This was based on the common-law liability of the husband to anyone who might furnish the wife with the necessaries of life. In 2 Bishop on

Marriage, Divorce and Separation, §976, the liability of the husband to provide the wife with suit money where she is without means is said to be a part of the same doctrine on which allowance of temporary alimony is justified. It is only where the income of the wife from her estate is ample to maintain her and enable her to prosecute her suit that courts have discretion to withhold temporary alimony and suit money. 1 R. C. L. pp. 894, 910. As the facts are presented in this case we think they not only justified, but in justice and equity demanded, a decree not only for permanent alimony but for a sum sufficient to have maintained the plaintiff pending the suit in the court below and upon appeal in this court and for a reasonable sum for counsel fees and other suit expenses, and that the decree below must be reversed for denying her this relief.

The fifth point urged by defendant in support of the decree, namely, that he and not plaintiff was entitled to a decree a mensa upon the new matter in his answer, has already been disposed of, justifying the conclusion already indicated.

In as much as the court below denied alimony, temporary and permanent, and suit money, and also denied plaintiff any allowance for either maintenance or expenses pending this appeal, her counsel say we should proceed to pronounce such decree in her favor as the facts appearing on the record will justly warrant. The practice observed here in such cases is to refer the matter of such allowances to the circuit court subject to review here if they be too small or too large. We think this is the better practice and that it ought to be followed as heretofore.

The last point of error relied upon by appellant is that the decree undertook to deprive her of any interest as doweress, distributee or otherwise in the property, real or personal, of defendant. We think this point is well founded and that the decree in this particular also should be reversed. A decree a mensa is not a dissolution of the marriage bonds, and so long as the marital relationship exists, the wife can not be deprived of her marital rights which the law gives her in her husband's property. The decree against a husband for a divorce a mensa, by section 16 of chapter 65 of the Code, would operate to deprive him of curtesy in his wife's estate. Section 11 of chapter 64 does not authorize

the court on decreeing a divorce to the wife, to deprive her of her marital rights.

For the errors in the decree, in the particulars indicated, the same will be reversed, and in all other respects affirmed, and the cause will be remanded to the circuit court for further proceedings to be had therein in accordance with the principles herein enunciated and further according to the rules and principles governing courts of equity.

*Reversed in part.   Affirmed in part.   Remanded.*