# CHARLESTON.

RETTA NORMAN v. EPHRIAM NORMAN.,

Submitted April 26, 1921.    Decided May 10, 1921.

1. DIVORCE—*"Condonation" of Cruelty Must Evidence Unequivocal Intent to Forgive and to Voluntarily Resume Relations; Acts Held Insufficient to Show Condonation of Cruel and Inhuman Treatment.*

 Cruel and inhuman treatment justifying a divorce from bed and board may be condoned, but the acts relied upon for condonation of such treatment must evidence an unequivocal intent to forgive the transgressions complained of and to voluntarily resume marital relations. Where the matter relied upon for condonation consists of the wife remaining in her husband's home for several weeks, where her child of very tender years is sick, and where she is also confined as a result of injuries inflicted by her husband, and of proposals of reconciliation made to her by her husband, all of which are rejected and declined, it will not amount to condonation. (p. 642).

2. SAME—*Facts Governing Amount of Alimony to Which Wife Entitled on Divorce from Bed and Board Stated.*

 Upon the granting of a divorce from bed and board to the wife because of cruel and inhuman treatment, she is entitled to permanent alimony sufficient to support her, and any of the children of the marriage that may be given to her custody, in the station in life to which she is accustomed, taking into consideration the capacity of the husband to earn money and the income which he may have from accumulated property. (p. 645).

3. SAME—*Wife's Separate Income Not to be Considered on Question of Alimony; Husband Cannot Relieve Himself from Obligation to Support Wife and Children by Breaking Marriage Contract.*

 In such case the fact that the wife has property of her own from which she derives an income is not to be considered in determining whether or not she is entitled to alimony. The obligation of the husband is to provide support and maintenance for his wife and children, and he cannot relieve himself thereof by breaking the marriage contract. (p. 645).

4. SAME—*Appellate Court May Remand Case to Fix Permanent Alimony of Wife.*

 Where in a suit for divorce and alimony the court below

grants the prayer for divorce, but refuses to decree alimony to the injured wife, this court will reverse such decree to the extent that such alimony is refused, and remand the cause to the lower court to fix the amount of permanent alimony to which the wife is entitled.    (p. 645).

5.    SAME—*Court Cannot Deprive Wife Not at Fault of Marital Rights in Husband's Realty without Compensation.*

Upon decreeing a divorce from bed and board a circuit court may make further decree concerning the estate and maintenance of the parties to the suit under the provisions of section 11 of chapter 64 of the Code. It is error, however, in such case to deprive a wife, who is granted a divorce from her husband because of cruel and inhuman treatment, of her marital rights in his real estate without making any compensation to her therefor.    (p. 646).

6.    SAME—*When Decree as to Custody of Children Will Not be Disturbed Stated.*

The decree of a circuit court in a suit for divorce providing for the custody of the issue of the marriage will not ordinarily be disturbed by this court on appeal, where it appears that the children, thus provided for, will in all probability receive proper maintenance, care and education, and the natural feelings of each of the parents have been considered and given due weight.    (p. 648).

7.    SAME—*Father's Natural Rights Not Enforced to Full Extent, Where Wife Compelled to Abandon Home Because of Cruelty.*

The general rule that the father is the natural custodian of his minor children will not be enforced to its full extent in a case where, because of his cruel treatment of his wife, she is compelled to abandon their home for her safety. Under such circumstances the court in providing for the custody of the children will give due regard to the mother's feelings, and her natural love and affection for her children, and if it appears from the whole case that one or more of such children will be as well cared for by the mother as though the custody were given to the father, a decree granting such custody to the mother will not be reversed on appeal.    (p. 648).

Appeal from Circuit Court, Webster County.

Suit by Retta Norman against Ephriam Norman for divorce. Decree for defendant and plaintiff appeals.

*Affirmed in part. Reversed in part. Remanded.*

*W. T. Talbott,* for appellant.
*Morton & Wooddell,* for appellee.

RITZ, PRESIDENT:

The plaintiff instituted this suit for the purpose of secur-
ing a divorce *a mensa et thoro* from her husband, on the
ground of cruel and inhuman treatment, in which suit she
also prayed for an allowance of alimony, and for the custody
of the two infant children, issue of the marriage. Upon a
hearing the court below found that she was entitled to a
divorce *a mensa et thoro,* and decreed accordingly. She was
also allowed temporary alimony, but while the litigation was
pending this was discontinued by order of the court, and upon
the final hearing she was denied any alimony. Each of the
parties is the owner of a small amount of real estate, and the
court decreed that each of them should thereafter hold the
same free from any claims of the other because of the exist-
ence of the marital relation. It was also decreed that the
older of the two children be placed in the custody of the
defendant, his father, and the younger with the plaintiff, his
mother. From the decree suspending the temporary main-
tenance allowed her, and from that part of the final decree
depriving her of her marital rights in her husband's real
estate, denying her permanent alimony, and giving the cus-
tody of the older of the two children to the husband, the
plaintiff appeals, and on the appeal the defendant assigns
as cross error the action of the court in granting the plaintiff
any relief, and particularly in giving her the custody of the
younger of the two children.

The parties were married in the month of April, 1913, in
the county of Webster. Immediately after the marriage
defendant took his wife to the home where his father and
mother and other members of his family were living. It
seems that there was some friction between her and some
members of the defendant's family, and in the year 1915,
because of these difficulties, she left. He thereupon instituted
a suit for divorce against her upon the ground of desertion,
but before the hearing the parties became reconciled, and in
the month of April, 1916, resumed their marital relations.

She claims that this reconciliation was based upon the promise of her husband to provide a' home separate from that occupied by the other members of his family, and that for a short time he did do this. However, soon after they resumed their marital relations, at least some members of the defendant's family lived with them. It does not appear, however, that any further difficulty was experienced on this account. The plaintiff charges that the defendant was cruel and brutal to her on a number of occasions. Upon one occasion she testifies that he came home from work late in the evening, and she asked him to care for the baby until she could go out and milk the cow, explaining that the child was sick, for which reason she had been unable to leave it until his return; that he flew into a rage and, without any other provocation, seized her by the shoulder, shook her violently, and used some abusive language toward her. She is fully corroborated in regard to this transaction by one of her brothers who was present at the time, and the defendant does not deny it. She did not, however, leave him on account of this, but in the month of March, to be exact, on the 9th of March, 1919, she says that while she was in the kitchen getting breakfast, and while she was washing her hands in a basin provided for that purpose, her husband came in and desired to make his morning ablutions. She asked him to wait a moment and she would give him a basin of water; that he asked where the other basin was, to which she replied that it was full of holes. He thereupon replied in a very angry tone that she was a liar; that this angered her and she responded that he was the liar, whereupon he, with his right hand, seized her by the throat, and with his left hand by the right arm, and choked her and shook her so violently that she lost consciousness. She says that while he was choking her she grabbed his shirt collar in order to support herself, but the button came off and she was left without any support. She also says that when he released her throat she regained consciousness for a moment, but was unable to support herself, and while she was falling he struck her a violent blow on the head, and while she lay prostrate on the floor that he struck her or kicked her

in the side, which resulted in breaking two or three of her ribs. That this occurrence happened substantially as detailed by the plaintiff there can be little question. The defendant in effect admits that he deliberately provoked it for the purpose of teaching his wife that he was boss in the home. He denies that he choked her, or struck her, or kicked her, after she was prostrate upon the floor. He does admit that he seized her by the neck with his right hand, and by the right arm with his left hand, and shook her, but he claims he only did this gently. His statement, of course, that he seized his wife by the neck with his right hand is entirely inconsistent with his other statement that he did not choke her, for it would be reasonably impossible for an infuriated man weighing 200 pounds to seize by the neck a little woman weighing 98 pounds, and shake her, as he admits, without the choking about which she testifies being the result. He does not deny she received the blow on the head and the broken ribs in the encounter, but his theory is that she deliberately fell on the floor and suffered these injuries from the fall. In her testimony she says that she was so far unconscious at the time she received the blow on the head, and after she was prostrate on the floor, that she does not know from what source they came. It may be possible that she struck her head or somthing in falling, and it may also be possible that the broken ribs are the result of falling on the floor. This is not very material, however, as it is unquestionably true that the efficient cause of her fall was the violent attack made upon her by her husband, and he is chargeable with whatever resulted from that attack. The defendant's father was in an adjoining room in the house at the time of this occurrence, and his testimony does not substantially conflict with the testimony of the husband and wife. There is no irreconcilable conflict in the testimony of the witnesses as to this occurrence, except as to the defendant's opinion as to what caused the plaintiff's broken ribs and the wound on her head. After this occurrence the defendant and his father made overtures to the plaintiff for a reconciliation. These negotiations were carried on for several weeks, but all propositions made by them were declined by the plaintiff. The defend-

ant does not seriously contend but that his conduct on this occasion was brutal and inhuman, but he says that the plaintiff is not entitled to the divorce from bed and board granted her, for the reason that she condoned this conduct. It is true she stayed in the house for several weeks, but she explains that this was because her baby was ill with chickenpox, and she could not take him away, and when he recovered from this disease he contracted measles, and she had to wait until that disease had run its course before he could be moved, during which time she suffered from the injuries inflicted upon her by her husband, as well as from an attack of pleurisy; that as soon as these troubles were removed she left the house with her property, and with her younger child. She admits that during the time she remained marital relations were resumed between her and her husband, but claims that on these occasions he forced his embraces upon her, and she was too weak physically to resist. It is quite true, in fact is admitted by both the defendant and his father, that she rejected all their overtures toward a reconciliation. Upon the showing made we are satisfied that the court's finding that the plaintiff was entitled to a divorce from bed and board is entirely justified. Her acts which are relied upon as condonation, under the circumstances, cannot be taken to have that effect.

Of course, if the plaintiff was entitled to a divorce from bed and board, and we hold that she was, she was entitled to alimony. The marriage contract imposed upon the husband the obligations to support and maintain his wife and the offspring of the marriage, and he cannot relieve himself of the obligtions of this contract by conduct which compels his wife to leave his home for her personal safety. The fact that the wife has a small amount of property in no way affects her right to compel her husband to support and maintain her and their infant child given to her custody. She is not compelled to make good his obligation out of her estate, but is entitled to receive from him sufficient sums to support and maintain her and the child entrusted to her custody in the station in life to which they belong, considering, of course, the capacity of the husband to earn money, and the income

which he has from any property he may own. *Kittle* v. *Kittle,*
86 W. Va., 46, 102 S. E. 799. We will not, however
fix the amount of this alimony here. The amount to be allowed
is peculiarly a matter to be passed upon by the lower court,
subject to be reviewed, however, in case of injustice to either of
the parties, and until the lower court has fixed some amount
of which complaint is made, this Court will not inquire into
what sum will be proper for such purpose. *Rice* v. *Rice,* 88
W. Va. 54, 106 S. E. 237.

As above stated,, the decree of the lower court also deprived
the plaintiff of her marital rights in the property of the de-
fendant. It found that she was entitled to a divorce because of
the cruel and inhuman treatment of her by her husband, but
relieved him of all the obligations of his marriage contract,
and imposed them upon the innocent spouse, and in addition
deprived her of her inchoate right of dower in his property.
The decree in this respect is a little extraordinary to say
the least. While section 11 of chapter 64 authorizes the court
upon decreeing a divorce, whether from the bonds of matri-
mony, or from bed and board, to make such further decree
as it shall deem expedient concerning the estate or mainten-
ance of the parties, or either of them, there is no justification
for relieving a party at fault from all of his marital obliga-
tions, and taking from the innocent spouse such rights in
his property as are conferred upon her by general law. There
is some language in the case of *Kittle* v. *Kittle, supra,* that
may be construed as denying that the court has any power to
affect the marital rights of the parties in the property of each
other where a divorce from bed and board is granted. In that
case the wife was granted relief, but she was denied alimony,
and her husband's property relieved of the encumbrance of
her inchoate right of dower, just as in this case. We held
that this could not be done. The court has the power to
make any proper order in regard to the property or estate of
the parties in a divorce suit, but he may not deprive a wife of
her inchoate right of dower in her husband's estate where
she is innnocent of any wrongdoing. If it should turn out
that she had deserted and abandoned her husband without

cause, and relief was granted to him then it would be in the
power of the court to enter an order relieving his estate of
the burden of her inchoate right of dower. The statute gives
the court power to make proper orders in regard to the estates
of either of the parties, but he cannot arbitrarily deprive one
of the parties of his rights. So in this case we are constrained
to hold that the decree of the court depriving the plaintiff
of her marital rights in the defendant's property will have
to be reversed. Of course, the court found that the defendant
was at fault, that his conduct virtually drove his wife from
their home, and the decree, so far as it deprives him of his
marital rights in her property, finds a basis in the evidence,
and was not only within the court's jurisdiction, but the
jurisdiction was properly exercised in that regard.

Plaintiff also complains of the action of the court in dis-
continuing the allowance of temporary alimony to her pend-
ing the litigation. It appears that upon application made
shortly after suit was brought, the defendant was required
to pay her sixty dollars suit money, and fifteen dollars a
month as temporary alimony. After he had paid thirty dol-
lars of this temporary alimony, or two of the installments,
the cause was brought on for a hearing, and the order recites
that the judge was ready to decide it, but that upon motion
of the defendant the same was continued. The defendant
contends that the recital in the decree that the case was con-
tinued on his motion is a mistake; that it was in fact upon
motion of the plainitff, and that it was because of this contin-
uance on her motion that the temporary alimony was refused.
The court's decree showing this continuance on motion of the
defendant is, of course, conclusive upon us as to that question,
and surely it was improper for the court to deprive the plain-
tiff of her means of support simply because the defendant
wanted further time to present his defense. But even had the
continuance been on motion of the plaintiff, presumably suf-
ficient reason was shown to the court therefor, and if she made
such a case as convinced the court that she was entitled to a
continuance there was no reason for denying her temporary

alimony.   If she did not make a case entitling her to a contin-
uance, the same should have been denied.

The remaining question has to do with the custody of the
infant children of the parties.  At the time of the hearing in
the court below the older boy was five years of age, and the
younger was sixteen months.   The decree fixed the custody
of the former with the father, and of the latter with the
mother. Both parties complain of the decree in this regard.
In fact, this is one of the principal, if not the principal com-
plaint on both sides.   It is unfortunate that these children
are to be denied the supervising control and influence of
either parent.  The defendant insists that under the law he, as
the father, is the natural guardian of the children, and is
entitled to their custody and control.   This argument, how-
ever, is based upon his contention that he was not at fault,
or at least, if at fault, that his faults were condoned.   While
it is true that the father has for some purposes a superior
right to the mother to the custody of their children, due
largely to the fact that the obligation is upon him to make
material provision for their care and support, his rights in
this regard are always subservient to that other principle
which controls courts in cases involving the custody of chil-
dren, and that is their welfare.   There is no property in chil-
dren.   Neither of the parents own them, or have any abso-
lute right to control their destinies.   Natural affection of
the parent for the child is in most cases sufficient guaranty
that he will receive proper care, maintenance and education.
However, the right of the state is recognized   in   case   the
parents fail in their duty to their children, to compel the
performance of this duty, or to deprive the parents of the
custody and control of the child, or children.   Each expresses
an entire willingness to do so, and not only a willingness but
an anxiety in that regard, and their conduct in the past
toward these children warrants the belief that their protesta-
tions of love and affection toward them are not feigned.   It
may be that formerly under the harsh rule of law the father
would be entitled to the custody of both of these children, but
in recent times a more humane rule has prevailed. The courts
have learnd that so far as a child, particularly one of tender

years, can be said to have an owner, the mother is the real owner thereof, and where no injury or disadvantage will result to the child itself the feelings of the maternal parent must be given consideration. Particularly is this true in a case like this where she is compelled to leave the home of her husband through his fault. The court might very well, under the circumstances, have given the custody of both of these children to the mother. There is some attempt to show that the home in which the older boy is being reared is not a proper place for rearing children. This attempt, however, has failed. The record satisfies us that this child in the custody of his father will be given proper care and attention and educated in accordance with the station in life enjoyed by his parents. Just what actuated the court below in giving the custody to his father, we do not know. It may have been that the judge was impressed with the idea that it would impose upon the mother a burden heavier than she could bear, particularly in view of the fact that he relieved the father of any obligation to make provision for her or the child committed to her custody. Whatever may have been the motive which moved the court in regard to the custody of the children, we are not disposed to change it. The record satisfies us that both of them will be properly cared for and educated, and should it turn out in the future that either of the parents are derelict in their duty in this regard, a different provision may be made by the court upon application to that end.

What we have said results in a reversal of the decree of the lower court discontinuing the temporary allowance to the plaintiff for her maintenance and support pending the litigation, and of the final decree so far as it denied to her permanent alimony and deprived her of her marital rights in her husband's real estate, and a decree will be entered here granting her the allowance of temporary alimony at the rate fixed by the court below, from the time it was suspended until the entry of the final decree herein, and granting her permanent alimony from the entry of said final decree, and the cause remanded to the circuit court with directions to

fix the amount of such permanent alimony. In all other respects the final decree will be affirmed.

*Affirmed in part. Reversed in part. Remanded.*