# CHARLESTON.

## VICTORIA T. VICKERS v. R. E. VICKERS.

Submitted October 4, 1921. Decided October 18, 1921.

1. HUSBAND AND WIFE—*Husband Must Support Wife Unless Guilty of Offense Entitling Him to Divorce a mensa.*

   While the marital relation exists a husband must maintain and support the wife and he cannot abandon her and escape that obligation unless she has been guilty of some marital offense which would entitle him to a divorce *a mensa et thoro.* (p. 239).

2. SAME—*Trial Court Will not be Reversed on Conflicting Evidence as to Abandonment.*

   Where the husband abandons the wife, and she institutes suit for maintenance and support, and to justify his abandonment and non-support he charges adultery and cruel and inhuman treatment on the part of the wife, and the evidence is conflicting, contradictory and unsatisfactory, and the lower court on such evidence has found that the charges have not been sustained, the appellate court will refuse to reverse, although it might have rendered a different decree if it had acted thereon in the first instance. (p. 241).

3. SAME—*Amount Decreed for Support Not Disturbed Unless Clearly Erroneous, Especially Where Lower Court Retains Jurisdiction to Change.*

   In such case the amount decreed for support and maintenance of the wife will not be disturbed, unless clearly erro-

neous, and especially so, where the lower court retains juris-
diction to change the amount to meet changing conditions.
(p. 242).

4.  SAME—*Wife Held Entitled in Maintenance Suit to Reason-
able Counsel Fees for Former Divorce Suit.*

In such suit, reasonable counsel fees expended by the wife
in defense of a suit for divorce instituted against her since
the abandonment, charging her with a grave marital offense,
will be allowed, where it appears that in the divorce suit the
right of the wife to recover the same in any other suit or
proceeding has been expressly reserved and saved to her.
The amount of such counsel fees is within the sound dis-
cretion of the lower court, and will not be disturbed unless
the discretion has been abused.   (p. 243).

5.  SAME—*Wife May Recover Amount Expended for Her Support
After Husband's Abandonment Although She Has Separate
Estate.*

Where the husband abandons the wife, without sufficient
cause, she may recover from him, according to his ability,
the amount necessarily and economically expended by her for
support, according to her station in life, from the time of the
abandonment, although she may have a separate estate of
her own.   (p. 243).

Appeal from Circuit Court, Cabell County.

Suit by Victoria T. Vickers against R. E. Vickers, for
maintenance.   From a decree allowing a monthly mainten-
ance, and a further order allowing counsel fees in a divorce
suit formerly pending, the defendant appeals.

*Affirmed, with modification, and remanded.*

*Harry S. Irons, George I. Neal,* and *F. M. Livezey,* for ap-
pellant.

*J. W. Perry, Geo. J. McComas, Thomas R. Shepherd,* and
*Williams, Scott & Lovett,* for appellee.

LIVELY, JUDGE:

From a decree of October 15, 1920,   allowing   plaintiff
$250.00 per month for maintenance from the date of the in-
stitution of the suit and until the further order of the court,
together with an allowance of $500.00 for counsel fees in a

divorce suit formerly pending, defendant prosecutes this appeal.

The suit is for maintenance of the plaintiff, the wife, and the bill charges that the defendant, her husband, deserted her without just cause on January 1, 1918, and has thereafter failed and refused to live with her. Plaintiff avers that it requires the sum of $500.00 each month to suitably maintain her; that she has expended for that purpose out of her estate, since the abandonment, approximately $4000.00, and the further sum of $2000.00 as counsel fees and expenses in defending a former divorce proceeding instituted against her by defendant; and she prays for suitable allowance for her maintenance, and recovery of the sums expended.

Defendant admits that since the marriage they lived together as man and wife until 1911, but avers that from that time until he left her on January 1, 1918, they had no relations as such except to reside together in the same house on Fifth Avenue in the City of Huntington. Defendant also avers that when he left her and made his abode in the hospital, which he then owned in that city, he had cause and justification therefor; that she had been guilty of adultery about the year 1905, the legal evidence of which he had not obtained until about the time he left; and that her conduct toward him for many years constituted cruel and inhuman treatment, and had impaired his health and destroyed his peace of mind, the acts and omissions, which he asserts constitutes cruel and inhuman treatment, being set out in detail.

The marriage was solemnized in the year 1890, and three children were born, one of whom died in infancy and the other two, a boy and a girl aged about 20 and 17 years, respectively, are witnesses, giving testimony of the unfortunate estrangement of the parents. Defendant at the time of marriage was beginning a successful career as a physician and surgeon, and by dint of energy, industry and ability soon attained an enviable professional standing, and rapidly accumulated a fortune. His wife, a member of an old, aristocratic wealthy and influential family, was frugal and industrious and it is evident that she thus largely contributed to his professional and material success. A few years after

the marriage defendant erected a fine residence on Fifth Avenue in the residential section, furnishing it sumptuously, and they resided there until the time of the separation. It is now occupied by plaintiff. After moving into this home differences began concerning their domestic life, followed by violent quarrels and bickerings. The conduct of the household affairs was a source of disagreement. What one desired or suggested, the other opposed. One instance will suffice to illustrate the regrettable trend in their domestic life. The husband built a porch to the house, opposed by the wife because it covered some pretty stone work. She refused to be reconciled and would not sit on the porch for about two years. Their temperaments were incompatible, their wills in conflict, growing from bad to worse until it appears that they became irreconcilable. Mutual jealousies arose. In 1905, defendant testifies, he discovered a compromising relationship existing between his wife and a Dr. Price, who was associated with him in his practice, and who had access to his home, his professional office at that time being located in the dwelling house; that afterwards she admitted that Dr. Price had hugged and kissed her, but denied that any further impropriety existed between them. Dr. Price was promptly discharged, and afterwards died about 1909. The wife became jealous of her husband and suspected that improper relations existed between him and some of his female patients, and more especially one of the girl employees at the hospital, and she testifies that she heard and saw her husband kissing this particular employee. This the husband denied. In this air of mutual suspicion, "Trifles light as air are to the jealous confirmations strong as proofs of holy writ." In this atmosphere of distrust, love disappeared and mutual condemnations and recriminations filled its place. Somber jealousy sat at the hearthstone and would not be driven forth. It was ever present, like the death heads at the feast, an impassive acolyte at the sacred family altar. The wife testified that from the beginning their married life had been filled with sorrow, and Dr. Vickers testified that his home had been a hell.

Shall we enumerate the various mutual charges preferred,

and detail the evidence adduced in support of each? It would serve no useful purpose. It is reasonably well established that while the marital relation exists it is the duty of the husband to maintain the wife, and he cannot abandon her and escape his duties unless he can show that the wife has been guilty of some marital offense which would entitle him to a divorce from bed and board. *Alkire* v. *Alkire*, 33 W. Va. 517; *Martin* v. *Martin, Idem.*, 695. Neither spouse is justified in abandoning the other unless the conduct of the one abandoned has been such that when judicially determined it constitutes good cause for such a divorce.

The grounds relied upon by defendant to defeat plaintiff's claim for support are: (1) Adultery; (2) cruel and inhuman treatment. We think the charge of adultery is not well established. It is alleged to have been committed in 1905 by plaintiff with Dr. Price, and the evidence of two servants, both negroes, is relied upon. Coupled with this evidence is the testimony of other persons that plaintiff and Dr. Price were friendly, often seen together in the home and elsewhere, and seemed to be fond of each other's society; then the alleged confessions of plaintiff that Dr. Price had hugged and kissed her. The plaintiff indignantly denies any improper relations with Price, and denies the alleged confessions. The incident of the soiled towels thrown down the back stairway, testified to by the woman servant, is unsatisfactory. She does not connect defendant therewith except inferentially. Her testimony is vague and uncertain. The character and life of this witness is such as to lend little credence, little probative value, to her testimony. The testimony of Jas. Bullock, the negro man servant, relating to the bath room incident, is contradicted so successfully both by witnesses and physical facts as to leave little weight. Taking the evidence of these witnesses as true, there is no positive act of adultey proven. To establish adultery, positive and direct evidence is not required, but if it is sought to be established by circumstantial evidence, such evidence must be strong and clear as to carry conviction of the truth of the charge. *Huff* v. *Huff*, 73 W. Va. 331; *Martin* v. *Martin, supra; Anderson* v. *Anderson*, 78 W. Va.

118; *Nicely* v. *Nicely,* 81 W. Va. 269.    Moreover, it must be remembered that these alleged acts occurred in 1905, and never came to light until after the separation.    It was the other alleged cause, the cruel and inhuman treatment, which induced the abandonment.    There might have been thoughtless or impulsive indiscretions committed by each.    How many of us are free from them?    But, as was aptly said in *Martin* v. *Martin* by Judge ENGLISH: ''In assuming the marriage relation, it is understood that the contracting parties do so fully aware of the frailties and imperfections of human nature, and conscious of the fact that mutual  forbearance must be practiced to enable them to pursue pleasantly the journey of life as companions; each party  undertaking to overlook the moral wrongs and infirmities of the other.    The best interests of society, decency, and morality combine in demanding that the obligations taken upon themselves, by the parties who enter into the marriage contract, should not be abandoned and disregarded upon the mere whim or caprice of either party or upon slight cause, real or imaginary.''

What are the grounds alleged as constituting cruel and inhuman treatment?    Alleged persistence of the wife in doing menial work and her refusal to employ servants for that purpose; preparation and serving of unwholesome food in the home; unsanitary housekeeping; eavesdropping while defendant consulted his female patients in the hospital and elsewhere, and while directing the hospital business affairs; interfering with the workmen and the nurses and servants at the hospital; abuse of defendant for taking skilled  nurses with him when called away to perform surgical operations of a serious nature; illiberal and unmotherly treatment of the children; and generally a systematic and persistent effort, in many ways too numerous to detail, calculated and designed to humiliate defendant in his social and professional life; the result of which, defendant avers, was to destroy his nerves, his peace of mind, and to undermine his health.    Much evidence was taken in the attempt to substantiate these charges; on the other hand much evidence is in the record to rebut these charges.    Can we say that any of them have been satisfactorily established?    If they have been successfully proven

do they constitute cruel and inhuman treatment as meant by the statute? Want of congeniality, incompatible temperament, jealousy, nagging, quarreling, angry words and the like are not sufficient alone. The marital conduct and offenses must be such as to impair health. Just before the abandonment defendant applied for and obtained a life insurance policy for $50,000.00, after undergoing a medical examination for that purpose. He was sixty years of age at that time, and had practiced his arduous profession with constant energy and consummate ability. Had his health been impaired from any cause, a strict examination at that age for so large a life policy would likely have discovered impairment of health. Can we say that impairment of defendant's health has been satisfactorily established?

But on conflicting evidence, such as is shown by this record, this court gives peculiar weight to the judgment of the lower court. Even where the appellate court might have found otherwise in the first instance, it will not disturb the findings of the lower court where the evidence is such that different minds might reasonably disagree. *Gates* v. *Gates,* 87 W. Va. 603; *McCrow* v. *Bowyer,* 62 W. Va. 417; *Richardson* v. *Ralphsnyder,* 40 W. Va. 15; *Sibley* v. *Stacey,* 53 W. Va. 293; *Bartlett* v. *Cleavenger,* 35 W. Va. 720; *Smith* v. *Yoke,* 27 W. Va. 639. Our conclusion then is to sustain the finding of the lower court that plaintiff is entitled to maintenance and support; and having arrived at that conclusion, we are not disposed to disturb the monthly allowance fixed by the decree for that purpose. It appears that the sum of $250.00 is allowed from the date of the institution of the suit, May 1, 1919, subject to credits of monthly installments paid by defendant pending the suit, such sum to be paid monthly, "until the further order of this court." The circuit court has seen fit to retain jurisdiction in this regard, and should occasion and circumstances require, the amount can be enlarged or diminished to meet the changed conditions. It appears that plaintiff occupies the furnished dwelling house on Fifth Avenue, and no doubt the judge took this fact into consideration when the decree was pronounced. At this time the maintenance and education of the two children devolve upon

defendant and he is abundantly fulfilling that expensive duty.

It is insisted that it was error for the decree to allow attorneys' fees expended by plaintiff in defending a suit for divorce instituted against her by defendant, after he had left her, charging her with serious marital offenses, and which was afterwards dismissed on motion of defendant (plaintiff in that suit). It is asserted that such fees have no place in this suit, and should have been asserted in the proceeding in which they arose, and not having been decreed therein the claim is barred under the doctrine of res judicata and she is now estopped from asserting a claim which she should have litigated in the former suit. But when we examine the decree dismissing that action, we find the following; ''that the dismissal of this case shall be without prejudice to defendant to institute any other suit or proceeding for the purpose of compelling plaintiff to furnish her support and maintenance, or to collect any costs or fees expended or contended for by her in this cause.'' There is no doubt but that attorneys' fees could have been properly allowed her in that proceeding, and, having been expressly reserved, we can see no inequity in allowing recovery in this proceeding. Why should she be compelled to resort to an action at law? Why not adjudicate this money claim arising out of the marriage relation in a suit for maintenance? They are matters which are closely related; besides there is authority for the proposition that such fees fall within the category of necessities for which the wife may recover in proceedings for maintenance. 13 R. C. L. sec. 243; *Porter* v. *Briggs*, 38 Ia. 166; *Conant* v. *Burnham* (Mass.) 43 Am. Rep. 532; *Hamilton* v. *Salisbury*, 133 Mo. App. 718. Under the facts of this case we are of the opinion that the court properly allowed the fees complained of as error, and that the amount thereof was in the discretion of the judge. We see no abuse of his discretion.

The only question remaining is plaintiff's cross assignment of error for failure of the court to decree to her the sum of $2444.15 expended by her out of her separate estate for support during the time intervening between the date of abandonment, January 1, 1918, to the date of the institution of her suit May 1, 1919, sixteen months. The amount expended

by her for this purpose is itemized, and she states that she lived as economically as possible, and purchased very little clothing, using almost exclusively the clothing she had purchased prior to the abandonment, and had no servants.  We find no attempt to controvert her statement in this regard. Can she recover for these expenditures in this suit?  It is the duty of a husband to support his wife, irrespective of her separate estate.  It is an incident of the marriage relation, based on the marriage contract.  Judge RITZ said in *Norman* v. *Norman,* 88 W. Va. 640, 107 S. E. 407, ''The marriage contract imposed upon the husband the obligation to support and maintain his wife and the offspring of the marriage, and he cannot relieve himself of the obligation by conduct which compels the wife to leave his home for her personal safety. The fact that the wife has a small amount of property in no way affects her right to compel her husband to support and maintain her and their infant child given to her custody. She is not compelled to make good his obligation out of her estate, but is entitled to receive from him sufficient sums to support and maintain her and the child entrusted to her custody in the station in life to which they belong, considering, of course, the capacity of the husband to earn money, and the income which he has from any property he may own,'' citing *Kittle* v. *Kittle,* 86 W. Va. 46.    If a man deserts his wife, she may maintain an action against him to recover according to his ability the amount she has expended from her separate estate for her necessary support.    13 R. C. L. p. 1188, sec. 220; citing *De Brauwere* v. *De Brauwere,* 203 N. Y. 460.  It will be observed that the amount expended by the wife for her necessaries per month during this period of sixteen months is less than the monthly allowance of $250.00 fixed by the court in its decree and which begins with the institution of the suit on May 1, 1919; and less than the monthly sum volutarily deposited by defendant for the same purpose.  We do not find that any provision was made for her support during the time of separation and up to May 1, 1919.  We note the answer states that plaintiff had ample means in her possession belonging to defendant at the time he left her to support her during that period, but we find no evidence to support that

statement, and none has been pointed out in the briefs.   We are unable to perceive on what theory this claim was disallowed.   It is specifically claimed in the bill, fully proven, and is one of the issues.   If the support can be decreed from the beginning of the suit, there is no good. reason why it should not be also allowed from the date of the abandonment.

We modify the decree to the extent that plaintiff shall be allowed and decreed the sum of $2444.15, the amount expended by her out of her separate property for her support and maintenance from January 1, 1918 to May 1, 1919, affirm the decree in all other respects, and remand the cause.

*Affirmed, with modification, and remanded.*