57 N.J. Super. 575 (1959)
155 A.2d 125
LILLIAN GARINO, ALSO KNOWN AS CAROLINE GARINO, PLAINTIFF-APPELLANT,
v.
PETER GARINO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 1959.
Decided October 30, 1959.
*576 Before Judges PRICE, CONFORD and GAULKIN.
Mr. Anthony P. LaPorta argued the cause for plaintiff-appellant.
Mr. Nathan A. Whitfield (by assignment of the court) filed a brief amicus curiae.
No appearance for defendant-respondent.
*577 The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiff brought this action on September 13, 1957 in three counts: two for divorce from the defendant on statutory grounds of desertion and adultery, respectively; the third for reparation of the depletion of her separate estate to the extent of $4,680, alleged to have been necessarily expended by the plaintiff from her earnings in self-support after the defendant forced her from their home three years before she instituted the action. The Chancery Division judge held the adultery count sustained by the evidence and granted a judgment nisi on that ground, together with an allowance of alimony in futuro at the rate of $20 per week. He made no factual determination concerning the alleged ejection of the plaintiff from the home by the defendant but found that if this in fact occurred, the event took place in April 1956, which was less than two years prior to the institution of the action, thereby precluding the adjudication of the right to divorce on the ground of desertion, within the requirements of the statute. N.J.S. 2A:34-2b.
At a point in the submission of the plaintiff's proofs when it became apparent that she was developing her case on the third count the trial court sustained an objection on behalf of the defendant to any further proofs on the ground that no such cause of action is cognizable in this State. The third count was dismissed as not setting forth a "cause for action."
The Supreme Court denied plaintiff's petition for direct certification of the action of the trial court in the respect last stated. Later this court ordered the cause transmitted here to be dealt with as an appeal in ordinary course on the papers filed in the Supreme Court.
In view of the importance and novel nature of the question involved, and the fact that the defendant filed no brief on appeal, this court after argument directed that a brief amicus curiae be filed by Nathan A. Whitfield, Esq., and this has been done.
*578 The question of law presented by the third count of the complaint is a matter of first-instance consideration insofar as is revealed by our reported New Jersey decisions, although it has had considerable attention elsewhere. It will be useful to outline so much of the factual case developed at the trial as may be material to the cause of action invoked. These parties were married in 1925 and cohabited as husband and wife until April 1956. By that time their two daughters were grown, married and living in their own households. The parties own a two-family home in North Bergen as tenants by the entirety. They resided on the second floor, their older daughter (separated from her husband) occupying the first floor as a tenant. The rental thereof was provided by municipal relief funds which were turned back to the daughter by the mother to enable the daughter to support herself and a small child. Plaintiff has worked as a garment operator for many years. Her rate of pay now and heretofore has been $86 per week gross, $70 "take-home." She is subject, however, to annual lay-off periods of from 14 to 16 weeks. She has no other source of income.
The parties stipulated that defendant (who did not testify in any phase of the case) earned $105 per week gross, $85 "take-home," subject to a three-week annual lay-off.
Until September 1954 the fiscal arrangements of the parties were that defendant turned over all his earnings to plaintiff, retaining $12 weekly as a personal allowance. She paid all of the household and living expenses and the real estate maintenance bills (including those attendant upon a $3,000 summer cottage owned jointly). At that time, however, there was an abrupt change in their relationship. The testimony, partly by the plaintiff and partly by her daughters, is not very clear in respect to dates. Defendant came home late one night and plaintiff reproached him for association with another woman. From then on he discontinued sexual relations with her, saying she should "take care of yourself." "I will take care of myself." They were then occupying separate beds. He also ceased leaving her any money.
*579 In April 1956 there was another altercation over his staying out nights with another woman. He told her to get out of his room, that he had no use for her. She then moved to a hall bedroom, and they have never had marital relations since. It appears that at about that time defendant assumed most of the real estate expenses for the North Bergen property. There is some question as to who paid for repairs. There is no evidence as to what the financial arrangements were concerning meeting the household living expenses. Presumably defendant took care of those personal to himself and plaintiff paid the rest from her earnings.
In August 1957 plaintiff had the police raid a motel rendezvous between defendant and a woman with whom he had been socializing for some years, thereby obtaining the adultery evidence which resulted in the present judgment nisi. In alleged fear of violent reprisal by defendant for the raid plaintiff moved to the first-floor apartment of her daughter immediately thereafter.
When the trial court cut off further direct testimony by plaintiff she was about to respond to a question as to what she expended out of her own income and estate for her support after cessation of support payments by defendant in September 1954. The complaint fixes this amount at the "minimum sum of $30.00 per week" from that date until the institution of the action.
Subsequent to the filing of the brief amicus curiae the court addressed a request to counsel for plaintiff requesting he file an affidavit indicating in general terms what proofs other than or in addition to those taken at the trial plaintiff would have adduced in support of the third count of the complaint had the court not sustained the objection to proofs in support thereof. The material portion of the responding affidavit of counsel reads:
"I would have shown that the expenditures made by the wife, for which she wants to be reimbursed by her husband, were fair and reasonable, and that the disbursements were actually made from her wages and separate estate. I would have shown that these expenditures *580 were necessaries, which the wife had a right to expect from her husband, and I would have shown what he himself originally contributed weekly for necessaries, and that he considered those contributions as reasonable."
Thereafter the court requested that plaintiff herself file an affidavit supplementing counsel's affidavit and specifically answering these questions: (1) whether she ever asked her husband for support for the period 1954-1957; (2) if she did make such request or requests, to set forth when, in what manner and under what circumstances such request or requests for support were presented; (3) her explanation as to why she delayed in filing her suit for reimbursement for living expenses from September 1954, when she claims the support stopped, until the institution of this action in September 1957; (4) an outline of the general nature of the claimed expenditures for which she sought recovery in the case now under review. In the request it was indicated that counsel might if he chose file a supplemental memorandum relative to the content of the answers to the proposed questions. No supplemental affidavit in compliance with the court's request for the information mentioned has been forthcoming. In view thereof, and of the transcript of the trial as a whole, we deem it fair to conclude that the only motivation for plaintiff's making the demand contained in the third count at the time she did, rather than earlier, is that she then had the basis for a complaint for divorce for adultery and decided to pursue the money demand as part of the same action.
In the circumstances of this particular case we are not called upon to decide the main legal question considered by plaintiff to underlie the third count of the complaint  heretofore undecided in this State  i.e., whether a husband who defaults in his obligation to support his wife, thereby compelling her to resort to her own earnings and property for self-support, may be held accountable to her for the past accrued amount of such expenditures in an action by the wife seeking a money-judgment (independently of an *581 action for maintenance or divorce). The theory of the cause of action propounded by the plaintiff may be stated as follows. The husband is under a common-law obligation to support the wife. The Married Women's Act gives a married woman the right to her wages and earnings as her separate property, R.S. 37:2-13. Consequently a desertion of the wife by the husband, with the accompanying necessity on her part involuntarily to resort to her own earnings for self-support, warrants the allowance to her of specific restoration of such moneys on the analogy of an equitable suit by a wife to redress improper dealings by the husband with her separate estate. See 1 Pomeroy's Equity Jurisprudence (5th ed. 1941), § 159, p. 215; 4 op. cit., § 1099, pp. 292, 293.
A rule of recovery more or less based upon the general rationale just stated is widely recognized. Annotation, 117 A.L.R. 1181 (1938); 26 Am. Jur., Husband and Wife, § 343, pp. 942-943; 41 C.J.S. Husband and Wife § 395, p. 875; De Brauwere v. De Brauwere, 203 N.Y. 460, 96 N.E. 722, 38 L.R.A., N.S., 508 (Ct. App. 1911), but compare Manufacturers Trust Co. v. Gray, 278 N.Y. 380, 16 N.E.2d 373, 117 A.L.R. 1176 (Ct. App. 1938), and see 30 N.Y.U.L. Rev. 501 (1955); Bohun v. Kinasz, 124 Conn. 543, 200 A. 1015 (Sup. Ct. Err. 1938); Churchward v. Churchward, 132 Conn. 72, 42 A.2d 659 (Sup. Ct. Err. 1945) (even where wife's income exceeds husband's); Adler v. Adler, 171 Pa. Super. 508, 90 A.2d 389 (Super. Ct. 1952), discussed in 57 Dick. L. Rev. 370 (1953) and 26 Temple L.Q. 459 (1953); Smith v. Smith, 300 S.W.2d 275 (Mo. Ct. App. 1957), result approved in Note, 23 Mo. L. Rev. 92 (1958); Vickers v. Vickers, 89 W. Va. 236, 109 S.E. 234 (Sup. Ct. App. 1921); see Sodowsky v. Sodowsky, 51 Okl. 689, 152 P. 390 (Sup. Ct. 1915) (allowed only where wife's expenditures were made "involuntarily"); Spalding v. Spalding, 361 Ill. 387, 198 N.E. 136, 139, 631, 101 A.L.R. 433, 442 (Sup. Ct. 1935); cf. Rogers v. Rogers, 93 Kan. 114, 143 P. 410, L.R.A. 1915A, 1137 *582 (Sup. Ct. 1914) (action allowed after divorce for expenditures while deserted).
A contrary view is taken in the following cases: Gregg v. Gregg, 199 Md. 662, 87 A.2d 581 (Ct. App. 1952), criticized in Notes, 22 U. Cin. L. Rev. 104, 106 (1953) and 13 Md. L. Rev. 253 (1953); Gonzales v. Gonzales, 117 Tex. 183, 300 S.W. 20 (Com. App. 1927); Johnson v. Barnes, 69 Iowa 641, 29 N.W. 759 (Sup. Ct. 1886) (based on statute making both spouses jointly liable for family expenses); Decker v. Kedley, 148 F. 681 (9 Cir. 1906) (based on Alaska law).
Even where the remedy is allowed, however, it is generally recognized that it is to be administered in accordance with equitable precepts. One such principle, here pertinent, is that of laches. Cognate thereto in this context is the notion of waiver. In the case before us there is nothing to explain why the plaintiff waited three years, from 1954 to 1957, without suing on the putative cause of action now asserted, or invoking any of the general remedies available to force current support from the defendant. She could have had separate maintenance immediately upon abandonment and cessation of support, N.J.S. 2A:34-24, or brought an action for divorce for desertion after two years, moving for support pendente lite, N.J.S. 2A:34-2; or she could have had resort to support proceedings in the Juvenile and Domestic Relations Courts, either civil, N.J.S. 2A:4-18(e), or quasi-criminal, N.J.S. 2A:100-2 (Uniform Desertion and Non-Support Act). To withhold applying for any of the foregoing remedies and suddenly confront defendant two or three years later with a claim for reimbursement of almost $5,000 strikes us as highly inequitable. See Krotosky v. Krotosky, 169 App. Div. 850, 155 N.Y.S. 625 (App. Div. 1915); Pierce v. Pierce, 9 Hun 50 (N.Y. Sup. Ct. 1911), affirmed 71 N.Y. 154 (Ct. App. 1911).
Another shade of the same basic viewpoint is found in Manufacturers Trust Company v. Gray, supra, where it was said that the wife "may seek reimbursement from the husband *583 only where he has promised such reimbursement either expressly or by implication of fact or of law" (16 N.E.2d at page 375). If the wife's conduct evidences satisfaction for the time being to live on her own property or earnings rather than to be dependent upon the husband, she will not later be indulged a retroactive change of mind. Consult the full opinion in the New York case just cited. The above-cited A.L.R. annotation is to the effect that where the cause of action is recognized, its benefit will nevertheless be withheld if the wife has "waived the right by some conduct on her part, or failure to act, as delay in bringing the action" (117 A.L.R. at page 1181). See also Sodowsky v. Sodowsky, supra; but compare Bohun v. Kinasz, supra (allowing recovery for the period of time not barred by the contract statute of limitations).
Without considering at length or passing upon the existence in this state of the basic cause of action invoked, a matter certainly attended by some question, we conclude its entertainment and application in favor of the plaintiff in the factual background here shown would be consonant neither with equity nor the conditions for resort to the rule imposed by the best reasoned of the out-of-state decisions which accord it recognition.
Judgment affirmed.